## ASHBY P. CONNER ET AL. *vs.* GROH, DOUB & CO.

*Appeal—Final Decree—Equitable Defence in Action at Law—Cancellation and Reformation of Contract—Jurisdiction of Equity—Sufficiency of Evidence.*

A decree determining the right of a party to a credit on the purchase-money of property, and that the written contract does not correctly express the agreement of the parties, and referring the case to the auditor to state an account, is a final decree from which an appeal lies.

An appeal lies under Code, Art. 5, sec. 25 from an order whose practical effect is to refuse to dissolve an injunction.

Under Code, Art. 75, sec. 83, allowing defences in actions at law upon equitable grounds, a Court of law has no power to cancel or reform the contract sued on.

When a party alleges that the sealed contract upon which an action at law is brought against him was procured by fraud and that it does not express the real agreement of the parties, equity has jurisdiction of a bill to restrain the action at law and to reform or cancel the contract.

A written contract under seal provided for the sale by defendant to plaintiffs of a stock of goods for a designated sum ; possession to be given the following day, and payment to be made 15 days thereafter. Plaintiffs took possession, paid part of the purchase-money and subsequently filed a bill alleging that the real agreement between the parties was that plaintiffs were to pay one-third of the inventoried value of the goods; that defendant falsely represented that an inventory would show the cost of the goods to be about $9,000, while the inventory in fact showed the cost to be only about $5,000. The prayer of the bill was for the cancellation and reformation of the contract according to this allegation and for an injunction to restrain the prosecution of an action at law on the contract. *Held,* that the evidence failed to establish, by the requisite convincing proof, that the written contract did not express the real agreement of the parties, and that plaintiffs are not entitled to the relief asked for.

Appeal from a decree of the Circuit Court for Washington County (STAKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alex. Neill* and *J. A. Mason,* for the appellants.

The appellees, defendants in the suit at law, *appeared thereto and filed pleas.* The bill admits liability for a large part of the balance of said purchase-money. The contention of the appellees, therefore is : That as defendants in the suit at law, they are entitled to a reduction or abatement of the amount for which they are sued. Now can not they avail themselves of this in the suit at law and show the fraud and misrepresentation which they allege in diminution of the damage claimed against them ? Cannot they recoup as against the claim of the appellants in the

suit at law ?   It is well settled that questions of fraud and misrepresentation can be determined at law, and that both Courts of Law and Courts of Equity have concurrent jurisdiction in cases involving the questions of fraud.   It is further settled that the Court which first assumes jurisdiction will retain it and that relief in equity will not be given where there is a full, complete and adequate remedy at law.   *Home Life Co.* v. *Selig,* 81 Md. 200; *Nat. Park Bank,* v. *Lanaham, Trustee,* 60 Md. 514; *Meyer* v. *Saul,* 82 Md. 464.   Had the agreement sued on been an unsealed paper there is no doubt that all the matters set up in appellees' bill could have been adjudicated in a Court of Law.   *Dowler* v. *Cushwa,* 27 Md. 355; *Groff* v. *Hansel,* 33 Md. 161; *Warfield* v. *Booth,* 33 Md. 63; *Applegarth* v. *Robinson,* 65 Md. 493; *Fidelity Co.* v. *Haines,* 78 Md. 458.

The only reason why a similar proceeding was considered inapplicable in the present case was the fact that the agreement was under seal, but our Code allows all matters of defense upon equitable grounds to be pleaded in a Court of law.   Code, Art. 75, sec. 83.   Now the only ground for resorting to a Court of Equity is the existence of a seal to the agreement.   The facts set forth in the Court of Equity for relief against this sealed paper are the same facts permissible to be pleaded in a Court of Law in case the paper had no seal.   The distinction between the equitable and the legal remedy is based purely upon the form of the instrument.   Without the slightest departure from known and established legal procedure a Court of Law could have adjudicated the whole subject-matter except for the existence of the seal.   If, now, we can give any force and effect whatever to sec. 83, Art. 75 of the Code, and it is to be considered by the Court as having any existence or meaning, the present case calls most strongly for its application.

This mode of defense is made imperative by the ruling of this Court—in the case of *Park Association* v. *Shartzer,* 83 Md. 10, wherein relief in equity is denied because the

plaintiff "could interpose by equitable defense the same matter sought to be made the cause of complaint." And the practice has been recognized in *Miles, &c.,* v. *State, &c.,* 73 Md. 398; *Williams* v. *Peters,* 72 Md. 585; *Zihlman* v. *Glass Co.,* 74 Md. 303; *Crocker, Trustee,* v. *Hopps,* 78 Md. 264; *Spencer* v. *Patten,* 84 Md. 414.

In the case under consideration, the controversy originated in a Court of Law. No multiplicity of suits can arise. The whole of the subject-matter of the controversy is: Do Groh, Doub and Company owe the sum of $5,750 less the $1,500 paid by them, or are they only liable for the sum of $5,217, less one-third thereof and the credit of $1,500? To maintain the present bill is simply to oust a Court of Law from its jurisdiction and give to the appellees the selection of remedies, after the appellants have adopted a sanctioned legal remedy appropriate to their case, and the appellees have submitted themselves thereto.

The proof of the appellees utterly fails to show fraud and misrepresentation. Even if the testimony produced on the part of the appellants did not wholly destroy that of the appellees, the strongest aspect in which the appellees' testimony could be viewed is that there was a statement as to the value of the stock. This does not support the charge of fraud. It was a mere matter of opinion, and even assuming that the statement attributed to the said Conner was made, it was such as the law recognizes as being permissible. *Buschman* v. *Codd,* 52 Md. 207; *Ellis* v. *Andrews,* 56 N. Y. 83; *Veasey* v. *Daton,* 3 Allen ——; *Benjamin on Sales,* vol. 1, sec. 641; *Beach on Contract,* vol. 2, sec. 1436. Furthermore, the appellees had every opportunity and privilege to inspect the stock of goods before they entered into the written contract. If they did not do this to their own satisfaction they failed to use the ordinary care and prudence required of them.

The Court is asked to strike down and destroy the solemn written contract and to substitute in lieu thereof one in parol. To make an entirely different one from what the

parties, after due deliberation, made themselves.　The extreme care to be taken in the exercise of this *extraordinary power* is fully set out in *Ranstead* v. *Allen*, 85 Md. 486.

*D. W. Doub* and *Albert A. Doub* (with whom was *J. Clarence Lane* on the brief), for the appellees.

The order appealed from was interlocutory, does not determine a question of right, and no appeal lies from it.　Such order was one within the discretion of the Court from which no appeal lies.　*Hill* v. *Reifsnider*, 39 Md. 429; *Eq. Mut. Asso.* v. *Becker*, 45 Md. 632.　"A preparatory order directing the auditor to state an account, with a view to a future decree, and containing various opinions and directions, according to the then existing views of the Chancellor, for the guidance of the auditor, is not an adjudication of any right between parties."　*Clagett* v. *Crawford*, 12 G. & J. 275; *Snowden* v. *Dorsey*, 6 H. & J. 114.　"The order of reference left the question open for decision on final consideration of the accounts."　*Owings* v. *Worthington*, 4 Md. 260. It is the *order* or *decree* and not the *opinion* which determines rights and forms the basis for appeal.　*Davis* v. *Gemmell*, 73 Md. 530, 552.　If upon further proof as to the real value of the goods it had been shown that the representations of Conner as to their value were true or that the inventory taken by the appellees was erroneous, the Court could and would have decreed accordingly.

Conner's representations were material and without them the contract would never have been entered into.　The plaintiffs acted solely and exclusively upon the faith and credit of his representations and they went to the very substance and essence of the transaction; they were deceived by them and have suffered loss in consequence; Conner knew them to be false when he made them, or made them so recklessly that the consequences are to him the same. Whether the party misrepresenting material facts knew them to be false or made the assertions without knowing whether they were true or false is immaterial, and mistake

as well as fraud in any representation of fact material to the contract furnishes a sufficient ground to set it aside and declare it a nullity. *Alvarez* v. *Brannan*, 7 Cal. 503, 68 Am. Dec. 274; *Daniel* v. *Mitchell*, 1 Story, 190; *Mineral* v. *Pritcherd*, 16 Ala. 785, 50 Am. Dec. 203; *Fargo Gaslight and Coke Co.* v. *Fargo Gas and Electric Light Co.*, 4 N. D. 219, 37 L. R. A. 593, note, p. 608; *Juzan* v. *Toulmin*, 19 Ala. 662 (44 Am. Dec. 448), fully reviews the ,law applicable to actions of deceit and holds that an extraordinary variation between the consideration and the value of the stock is of itself a vehement presumption of fraud.

The allegations of the bill of complaint have been fully proved by such a preponderance of testimony, as will satisfy the conscience of the Court of Equity that the plaintiffs are entitled to relief at its hands, and looking at the law and the justice of the case the remedy applied for can work no hardships upon the defendant. The plaintiffs come into Court with clean hands and ready and willing to abide by and perform the contract as actually made between the parties, and to pay the defendants the amount to which they are justly entitled, namely, the amount of the inventory less thirty-three and one-third per cent which they have expressly contracted to pay.

PEARCE, J., delivered the opinion of the Court.

The bill in this case was filed by the appellees against the appellants in the Circuit Court for Washington County in Equity, to cancel and reform a certain written contract between the appellees and Ashby P. Conner for the purchase by the appellees of a hardware store and the good will of the business, and also to restrain Conner and the Peoples' National Bank of Hagerstown, to which he had assigned his interest in the contract, from the further prosecution of an action at law instituted in said Circuit Court by Conner, for the use of the Bank, upon the same contract.

Answers were filed and testimony taken, and an opinion

was rendered that the plaintiffs were entitled to the relief prayed, and saying " a decree can be framed directing the payment of the residue of the purchase-money, less the proper amount to be credited to the plaintiffs as compensation for damages suffered from the representations of the vendor. Such a decree I am ready to sign in this case." Thereupon a decree was passed directing " that the papers and proceedings in the cause be, and they are hereby referred to the auditor to state an account of the indebtedness due from the plaintiffs to the defendants on the purchase of the stock of goods, in accordance with the opinion of the Court," and from that decree this appeal was taken.

We will first dispose of the motion to dismiss the appeal, which is based upon the contention that it is merely an interlocutory order, and determines no question of right between the parties. We think it is clear however, that the decree does determine that the contract did not truly set out the agreement between the parties, and that the plaintiffs were entitled to a credit of thirty-three and a third per cent upon the inventoried value of the stock of goods, and were not bound by the contract to pay the specific sum named therein as the consideration. This was the essence of the question of right involved, and the reference to the auditor is merely to enable the Court to measure the credit to be allowed. Resort to the opinion is not necessary to sustain this conclusion. It is apparent upon the face of the decree, and in such case an appeal lies under Code, Art. 5, sec. 25.

Moreover, while the decree does not in very terms continue the injunction which had been granted, the case was heard on motion to dissolve, and the purpose and the direct effect of the decree is to continue the injunction, and is in fact a refusal to dissolve. Certainly in the present status of this case, the defendants cannot prosecute the action at law. The only remedy open for the securing of that right, is the appeal which has been taken, and the Code expressly allows an appeal from an order granting an

injunction, or refusing to dissolve one.   The motion to dismiss must therefore be overruled.

The agreement which it is sought to cancel and reform is a brief sealed instrument, as follows:

" This agreement made this 31st day of December, A. D. 1897, by and between Ashby P. Conner of Hagerstown, Maryland, and John C. F. Groh, Frank L. Doub, and D. Webster Groh of Washington County, Maryland:

Witnesseth, that the said Ashby P. Conner does hereby agree to sell and does sell unto John C. F. Groh, Frank L. Doub, and D. Webster Groh, all his hardware store, situate on West Washington Street in Hagerstown, Maryland, together with all fixtures and good will connected with said business (except iron safe, sleigh, bicycle, team, and all plumbing materials and supplies), at and for the sum of $5,750 to be paid in cash on or before January 15th, 1898.   Possession to be given January 1st, 1898.   All insurance policies to be transferred to the purchasers without extra compensation, and lease of store room to April 1st, 1899, at $500 rental per year.   The said Conner to transfer the said stock of goods free and clear of all claims and liens.

Witness our hands and seals.

ASHBY P. CONNER, [Seal.]
JOHN C. F. GROH,    [Seal.]
FRANK L. DOUB,    [Seal.]
D. WEBSTER GROH, [Seal.]"

The bill alleges that the plaintiffs were induced to enter into this agreement by the fraudulent representations of Conner, and that as written, it does not truly represent the agreement of the parties ; that Conner represented, as an inducement to the purchase, that the stock of goods would inventory at cost price between $9,000 and $10,000, and that the agreement of purchase was that one-third of the inventoried value was to be deducted therefrom, and the balance was to be the price paid ; that the sum of $5,750 mentioned in the contract, represented the inventoried value

as asserted by Conner, after deducting one-third therefrom, and also $250, to cover sales made between the date of the offer of purchase and the execution of the written agreement; but that an inventory taken immediately after entering into possession, showed only a total value of $5,345.06, and that they had paid $1,500 on the contract before completion of the inventory and discovery of the fraud, and that a suit at law had been brought upon the contract by Conner, for the use of the bank, to recover the balance due thereon upon its face. The relief prayed was for the cancellation and reformation of the contract, for an injunction to restrain the prosecution of the suit at law, and for such further relief as the case should require.

It is contended by the appellants that the appellees had a full, complete, and adequate remedy at law by a plea " for defense upon equitable grounds " under sec. 83, Art. 75 of the Code, by means of which they could show fraud if it existed, and recoup the damages shown to have resulted therefrom; and though conceding that Courts of Equity and Law have concurrent jurisdiction in cases of fraud, yet as the Court of Law in this case, first assumed jurisdiction, it should be allowed to retain it, and the bill should therefore be dismissed. But without expressing any opinion upon this question, we may inquire whether such plea is available in the suit at law in the present case. It appears from the record that before the bill was filed, the appellees had pleaded to the suit at law ;

.1st. That the alleged deed was not their deed ;

2nd. That it was procured by the fraud of Conner.

These pleas were pleaded as a common law defense to an action on a contract under seal. There was no plea for defense on equitable grounds. In *Zihlman* v. *Cumberland Glass Company*, 74 Md. 303, which was also an action for breach of a contract under seal, a plea was filed which sought to vary and contradict the express terms of the sealed contract itself, by verbal proof and by an alleged verbal agreement, made before the contract sued on was

executed. To this plea there was a demurrer, which this Court held was correctly sustained, but declined to express any opinion as to the effect of the plea, if it had been pleaded as a defense on equitable grounds, that question not having been argued by counsel for the appellant. Here, however, that question has been argued and considered, and it is proper we should decide it.

Courts of Law have concurrent jurisdiction with Courts of Equity over questions of fraud and misrepresentation, but have no power to reform contracts alleged to have been procured by fraud. *Refining Company* v. *Campbell & Zell Company*, 83 Md. 56 and 57. But a cause of action which is under seal, when impeached at law on the ground of fraud, must be set aside *in toto*, or sustained as it stands, for such judgment *upon that very contract* as the proof may require. *Groff* v. *Hansel*, 33 Md. 169. In dealing with contracts under seal, even where questions of fraud in procurement are involved, all questions of pleading and evidence must be determined by reference to the contract, *as presented to the Court*, not as it may be contended it should have been written. Evidence not admissible under a plea, made as a common law defense, would not become admissible, merely by making the same plea for defense upon equitable grounds, because, as the Court of law is without jurisdiction to cancel or reform a contract, it is unreasonable, if not impossible, to suppose that the Legislature in permitting pleas in suits at law for defense on equitable grounds, intended that the power of cancellation or reformation should be the result of the mere operation of a plea. A consideration of the narrow and rigid lines within which Courts of law are confined in rendering judgments, and of the liberal and elastic powers conceded to Courts of Equity in moulding and enforcing their decrees, forbids that we should give to section 83 of Article 75 the effect which would necessarily result from upholding the contention of the appellants in this regard. In *Taylor & Bradford* v. *Miller*, 73 Md. 222, where section 83 of Article

75 was under consideration, the present Chief Justice, speaking for the Court, said : " That statute was designed to prevent circuity of actions in *many instances,* and to allow *numerous* defenses at law, which before its passage, could only have been availed of in equity, *but was never intended to destroy the distinctions which exist between the jurisdiction of a Court of law and a Court of Equity.*" If we should now hold that this statute has so enlarged the jurisdiction of Courts of law as to confer upon them the power of cancelling and reforming contracts, we should destroy, by construction, one of the fundamental distinctions between the jurisdiction of law and equity, and this we are not prepared to do.

Moreover, sec. 69, Art. 16 of the Code (Act of 1888) provides that no Court shall refuse to issue a *mandamus* or injunction on the mere ground that the party asking the same has an adequate remedy in damages, unless the party against whom the same is asked, shall satisfy the Court he has property from which the damages can be made, or shall give bond with security to answer all damages and costs adjudged by any Court of competent jurisdiction. That Act was under consideration in *Frederick County Bank* v. *Shafer,* 87 Md. 54, where the effort was to enjoin the defendant from assigning a sum of money due her from certain trustees in insolvency, and to require these trustees to pay the same to the plaintiff in discharge of a debt due it by the defendant, on the ground that the defendant was insolvent, and that the plaintiff would not be protected by a judgment on its claim. The Court affirmed the decree refusing the injunction saying the Act was not intended to authorize a mandatory injunction to require the payment of a debt, but was intended to reach the class of cases in which injunction or *mandamus* had been (hitherto) refused because the plaintiff could be compensated in damages in suits at law, and that " it has relation to cases where damages, as contra-distinguished from debt, are involved." Upon both grounds, stated above, we think the learned

Judge below was right in sustaining the jurisdiction of equity. But upon a careful consideration of the testimony we are unable to agree with the conclusion reached by the Court upon the merits.

A very large number of exceptions were taken by the appellants to the admissibility of testimony, chiefly on the ground that it was offered to contradict and vary the written agreement, but as this proceeding is to cancel and reform the contract, and not to enforce it, all such testimony is clearly admissible if not otherwise open to objection, and in the view which we take of the whole case, it will be unnecessary to consider any of the exceptions. Nor shall we pause to inquire whether the alleged misrepresentation, if made, was in respect of an ascertainable fact as to which an action will lie, where the situation is not the result of one's own inattention and carelessness, which is no more relieved against in equity than at law ; or in respect of a mere matter of opinion, not sufficient to support an action. The authorities are not entirely clear and consistent upon this question, and the task is not always easy to draw a satisfactory line of demarcation. But we do not feel called upon to attempt the task in this case, since if we should concede to the testimony of the appellees all the force which can be claimed for it, the conflict of testimony upon the whole case is too great to justify the exercise of the extraordinary power of cancellation confided alone to Courts of Equity. To justify the exertion of this power, the fraud must be made clearly to appear, and the proof must be *convincing*, not *merely preponderating*. *Beach on Contracts*, vol. 2, secs. 1763, 1764.

In *Ranstead* v. *Allen*, 85 Md. 486, it is said : "It is an exercise of power fraught with much danger, unless guarded with an ever zealous care to see that there is no uncertainty about the evidence relied on. This Court has in several cases adopted the language of the Supreme Court of the United States in the case of *Atlantic Delaine Company* v. *James*, 94 U. S. 207, on this subject, that cancelling an

executed contract is an exertion of the most extraordinary power of a Court of Equity. The power ought not be exercised except in a clear case, and never for alleged fraud, unless the fraud is made clearly to appear ; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been injured thereby."

The vital question in this case, upon which the decision must depend, is whether the sale was made by inventory to be taken, subject to a discount of 33⅓ % ($5,750 being a mere estimate of the result of this operation), or for a lump sum of $5,750, without regard to an inventory. The written contract is unequivocally for a lump sum, with no requirement or suggestion of an inventory, and the proposition of the appellees is to write into that contract a proviso alleged to have been fraudulently omitted, which not merely modifies, but radically changes the character of the contract, This requires, as we have said, not merely *preponderating*, but *convincing* proof, and in our search for this proof we have examined the voluminous testimony with patient care. The contract was drawn by an experienced attorney, the brother of one of the appellees, in the presence of two of the appellees and of Conner. It was read over to all the parties by the attorney, and again read over by the two appellees present, neither of whom objected to the omission of the provision which it is now sought to insert, though they testify they knew the contract was not properly drawn and that the provision without which they would not have purchased, was omitted. The attorney has testified with entire frankness and fairness. He declares that he wrote the agreement as he was instructed to write it, and that as stated to him by the parties at his office the contract fully represents the agreement between them. In his examination in chief he said "Mr. Groh told me they had made Mr. Conner an offer to buy the stock at the inventory price less 33⅓ % discount, and that Mr. Conner had offered to sell at 25 % discount, and that after their consultations they had finally settled down on the basis of $5,750, as I understood it,

that being one-third off of the price the stock would inventory." On cross-examination, he said : "Mr. Conner stated he would give them a much better bargain *without an inventory* than with one,  *  *  *  *  *  *  and that they had settled down on that lump sum after all that dickering, and all , of $5,750," and there is no evidence that either of the appellees present dissented from this statement of Conner.   It is true he also testifies that Conner said "he was sure the stock would inventory $9,000"—that "it would—it ought—he believed it would, and that he knew it would," but this falls far short of proof that the sale was made upon *condition that it should do so.*

All the appellees testify unequivocally, that they understood the sale was made upon that condition, and that they would not otherwise have purchased, but they have produced no evidence that Conner so intended or understood, and if the agreement is to be reformed on the ground of mistake, the mistake must be shown to have been a mutual one.   Moreover, the contract was executed Dec. 31, 1897. Possession of the store was taken January 1st, 1898.   The inventory which the appellees took (and which was a very natural business matter, irrespective of the terms of the sale), was begun Jany. 2nd, 1898, and was not completed until the 16th or 17th inst. and Webster Groh testifies that during the taking of the inventory they were much disappointed.   $1,500 was paid January 4th on account, and on the 14th or 15th, John Groh, in reply to Conner's request for the balance, replied that there was no reason why it should not be paid in a day or two, but neither he nor any of the appellees, ever referred to the inventory, until some days after the 15th.

On the other hand Conner testifies unequivocally that the written agreement correctly and truly represents the only conditions of sale ; that John Groh offered to buy at 33⅓ per cent discount from net cost, and he offered to sell at 25 per cent discount, both of which propositions were declined ; that John Groh then proposed to purchase at a

lump sum, and offered $6,000 cash, which he declined; that Groh returned a few days later and offered $5,750— the abatement of $250 from the previous offer, being made to cover sales in the interval, and that this was accepted, and the agreement drawn and executed without any mention of any inventory as a condition of the sale. He denies that he ever guaranteed the stock would inventory $9,000, or any other sum, or that he ever agreed or offered to sell subject to inventory, except at a discount of 25 per cent, though he admits he believed it would inventory $9,000, and frequently so declared during the negotiations.

Mr. Sowers testifies that after the failure of the propositions based upon an inventory, John Groh, about the middle of December, made an offer of $6,000, and gave as his reason for the proposition to lump the stock, that he was engaged in making improvements on his farm and had not the time to make an inventory.

Edwin J. McKee testifies that John Groh asked him to glance over the stock without taking an inventory, and tell him what he thought it was worth—that nothing was said about taking any inventory, and that he understood the reason his judgment was desired, was that they wanted to buy it in a whole

John P. Middlekauff testifies that Frank Doub told him while they were taking the inventory, that they had a chance to buy by lump, or by invoice, and that they had bought by lump, " but were taking an invoice because they wanted to get acquainted with what was there, and where the things were."

Conceding equal credit to the appellees and to Conner, and recognizing the weight of numbers to be with the appellees as between the parties, we cannot disregard the effect of the testimony of the three disinterested witnesses which corroborates Conner. The character of all the testimony taken together " is not such as would justify a Court of Equity in undoing that which was done, by parties perfectly competent to act for themselves, in one of the most

solemn ways known to the law, contracting under their hands and seals."

We must therefore reverse the decree of the Court below.

> *Decree reversed, injunction dissolved and bill dismissed, with costs to the appellants above and below.*

(Decided February 15th, 1900).