## MICHAEL H. KREPS vs. ELLEN E. KREPS.

*Insufficient Evidence to Show that an Absolute Conveyance was Upon a Trust—Resulting Trust.*

Certain lots of ground were conveyed to a married woman, and were subsequently conveyed by her and her husband to their son by a deed reciting that the purchase-money had been paid by the husband and that they had agreed to convey the lots to their son. After the death of the husband, the wife filed a bill against the grantee alleging that the recital in the deed to him as to the payment of the original purchase-money was untrue and was inserted in the deed without her knowledge; that the conveyance to the son had been made upon the faith of an agreement that he would loan a sum of money to the plaintiff and that he would convey the lots to herself and her husband as tenants by the entireties, and that her son had refused to carry out the agreement. The prayer of the bill was for a conveyance of the lots to the plaintiff. *Held,*

1st. That the evidence failed to establish the allegations of the bill and that plaintiff is not entitled to the relief asked for.

2nd. That if the purchase-money of the lots was paid by the plaintiff's husband there was no resulting trust in his favor which would entitle the plaintiff to dower rights, there being neither any allegation to that effect in the bill nor evidence in the case to establish such resulting trust.

When the party who pays the purchase-money of land causes the deed therefor to be made to his wife or child, there is no presumption of a resulting trust in favor of such party.

Appeal from a decree of the Circuit Court for Washington County (STAKE, J.)

The cause was submitted to the Court on briefs filed by

*J. Clarence Lane* and *H. H. Keedy, Jr.*, for the appellant.

*Alex. Neill*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

On November 20th, 1867, Mary S. White conveyed to Ellen E. Kreps, wife of Michael H. Kreps, in consideration of $291, five lots of land in Williamsport, Md.; and on January 8th, 1868, Isaac Gruber and others conveyed to her four other lots in the same town, in consideration of $120.

On August 23rd, 1895, Michael H. and Ellen E. Kreps conveyed these nine lots to their son Michael H. Kreps, Jr., by a deed containing the following recital:   " Whereas by the face of said deeds (being the two deeds above mentioned) it is stated that Ellen E. Kreps, wife of Michael H. Kreps, Sr., paid the purchase-money for said real estate, such was not the real facts ; it was Michael H. Kreps, Sr., who furnished the money to pay for the real estate, and whereas it is mutually agreed between the said Ellen E. Kreps and Michael H. Kreps, Sr., that they will make a deed conveying to Michael H. Kreps, Jr., said property as hereafter more fully described.   Now, therefore, in consideration of the premises, and the further consideration of the sum of one dollar in hand paid, the said Ellen E. Kreps and Michael H. Kreps, Sr., her husband, doth grant unto Michael H. Kreps, Jr., the following lots of ground " — describing them.   It may be observed here that in fact, neither of the two deeds first mentioned expressly states by whom the consideration was paid ; but merely state it was paid.

The son entered into possession of the property so conveyed, and now holds it.   The mother owned the house

and lot where she resided when this deed was executed, and still owns it. Her husband died in February or March, 1898, and on June 1st, 1898, she filed the bill in this case, alleging that on October 26th, 1895, she agreed with Michael H. Kreps, Jr., that she would convey to him said lots upon the trust that he would at once secure her a loan thereon for an amount not stated, and would thereupon convey said lots to herself and husband so that they should belong to them during their joint lives, and upon the death of either, to the survivor; and that her son agreed to accept the trust, and the deed was made the same day; that the recital in said conveyance, as to the payment of the purchase-money of these lots by her husband, was untrue, and was fraudulently inserted without her knowledge or consent, and that her son, though often requested, refused to carry out the alleged agreement in any respect. The prayer of the bill is for a conveyance to her, her husband having died, and for such other relief as her case should require.

The certified copy of the deed to the son, filed with the bill, shows that it was executed and acknowledged August 23rd, 1895, more than two months before the date of the agreement and conveyance as alleged in the bill, and there is nothing in the testimony to explain this discrepancy, but we shall presume this to be due to inadvertence, and without significance. The son answered denying all the allegations of fraud or imposition, as well as of the creation or acceptance of the trust set up, and relying upon the absolute title purporting to be conveyed by the deed, which he declared was freely executed by his mother with full knowledge of its contents.

The Circuit Court found that the plaintiff had not sustained her case for a conveyance, and to this we fully agree. The scrivener who prepared the deed, having sworn that he told her he should embody in it the statement as to the payment by her husband of the purchase-money of these lots, and that after preparing the deed he read it to her twice, and that she signed it understandingly, the Court

held she was bound by this recital, and her testimony that she had paid the purchase-money herself, could not avail against this recital which operates as an estoppel and binds parties and privies. "The reason of the rule is that the recital amounts to the confession of the party, and that confession is evidence against himself and those who stand in his place." *Carver* v. *Jackson*, 4 Peters, 87. But apart from the effect of this recital, we think the plaintiff failed to sustain her case. As between the parties, no consideration is essential to a deed. *Cunningham* v. *Dwyer*, 23 Md. 231. And unless obtained by fraud or imposition, it cannot be set aside by a party, for want of consideration. Mrs. Kreps' own testimony does not make good the allegations of her bill. When asked if her son came to her about the deed, or whether he made her any promises about the lots, she testifies, "he did not come to me about the deed"—"He did not make any promises. It was the old man, and Dugan (the magistrate)." Nowhere does she testify that the son agreed to accept the deed upon any trust, or that there was any agreement or conference between them relating to the making or acceptance of this deed. The magistrate who prepared it, and took the acknowledgment, testifies that the father asked him to write the deed, and he refused unless he could see him and his wife together, and talk the thing over, and that he then went up where Mrs. Kreps lived, and found them both there; that the father said in her presence that they had agreed to divide the property. He said "We are going to deed the sand lots to my son Michael—that there was a bill on part of the property which Michael would pay; that he had himself paid the purchase-money for the sand lots and also for the house, except Isaac Gruber's bill;" and that he, Dugan, told Mrs. Kreps he should put that in the preface of the deed; that after preparing the deed, he read it to her twice, and she said "that was all right, that they were dividing the property—she was to have the house where they were living, and he was to have the sand lots," and that she, then,

signed and acknowledged the deed, and he delivered it by their direction to the son. He also testified, without contradiction, that Mrs. Kreps was not then living with her husband, but was separated from him. The son testifies that his mother told him, before the deed was written, that she and her husband were going to divide the property, an d the lots were to be his, and the house hers; that the deed for the lots was to be made to the son, and that he was expected to pay for the deed; that she never told him he was to hold the property in trust for her and his father; and that the only thing his father ever said to him about the lots, was, "I expect to live with you the rest of my life, and I want you to bury me, and pay my debt to Isaac Gruber;" that his father lived with him about two years till he died, when he buried him, and paid the funeral bill and Gruber's bill; that all he ever said to any one about the lots, was said at the interview before his father's death— namely, that he did not want the lots, and did not claim them as his until his father's death; and that his mother had often told him that all the money paid for the house and for the sand lots came from his father.

We cannot set aside this deed upon such testimony; nor upon the testimony of four members of the family, who swear that at the interview before the father's death, Michael said, "The lots don't belong to me. They are not mine— I don't want them." Assuming these witnesses to be accurate in repeating the precise language used, these are the loose and unguarded expressions of an unlearned man, unfamiliar with business transactions, and properly considered in the light of all the testimony, are not irreconcilable with his explanation that he had done or said nothing to obtain the deed for the lots—that he did not wish them, and that he held them subject to his father's expressed wish that he should maintain him, bury him at his death, and pay the Gruber bill. Taken most strongly against him, they create suspicion only, and do not afford even preponderating proof of the fraud charged, while to warrant the cancellation of a

deed as between the parties, the proof must be convincing and not merely preponderating. *Atlantic Delaine Co.* v. *James*, 94 U. S. 207; *Conner* v. *Groh*, 90 Md. 674.

The plaintiff testifies that within two or three months after the execution of the deed, she went to her son to see what they were going to do for her, and found he would do nothing ; that shortly after this, she went to a lawyer, Mr. M. L. Keedy, and then first learned of the recital of the deed, yet does not state that she made complaint to any one of the falsity of the recital, and took no steps until death had sealed the lips of her husband. This course does not reflect additional credit upon her testimony upon this point, and the failure to assert her alleged right promptly, has worked manifest prejudice to the defendant, and must operate as a bar in a Court of Equity. *Demuth* v. *Old Town Bank*, 85 Md. 317.

The Circuit Court further held that as the recital of the deed established that the purchase-money was paid by the husband, a resulting trust arose in his favor ; and that the subsequent conveyance to the son, at his request, was only an execution of the resulting trust, and that on the father's death the lands descended to his heirs at law, subject to the dower right of the plaintiff ; and the decree accordingly declared such resulting trust, and referred the case to the auditor to state an account of rents and profits, with leave to the plaintiff to take proceedings for the assignment of her dower in the property. But with this conclusion we cannot agree. The general rule undoubtedly is that where the purchaser takes the conveyance in the name of a third party, a resulting trust will arise in the purchaser's favor ; but there is an equally well-established exception to the general rule, and accordingly, where the conveyance is taken in the name of wife, or child, or other person for whom the purchaser is under a natural, moral, or legal obligation to provide, the presumption of a resulting trust is rebutted, and the contrary presumption arises—that the purchase and conveyance were intended to be an advance-

ment, or a settlement upon the nominal grantee, and if the payer of the money claims a resulting trust, he must rebut the adverse presumption by proper evidence. 1 *Perry on Trusts*, sec. 143; *Hill on Trusts*, star page 98; *Glaister* v. *Hewer*, 8 Vesey, 199; *Mut. Ins. Co.* v. *Deale*, 18 Md. 45; *Groff* v. *Rohrer*, 35 Md. 331.

To sustain a bill to establish a resulting trust, the trust must be clearly alleged in the bill, not only in terms, but all the facts must be set out from which the trust is claimed to result. 1 *Perry on Trusts*, sec. 137.

Relief cannot be granted in such cases, under the prayer for general relief, on proof of facts outside of the case made by the pleadings. *Mott* v. *Mott*, 49 N. J. Eq. 192.

Here, not only are no facts alleged in the bill from which *the trust declared by the Court* could result, but no such trust is in terms alleged in the bill. A trust for the *wife's benefit* is alleged to have been fraudulently or improperly omitted from the deed, but this is not sustained by proof. No trust, resulting, constructive or implied, for the husband's benefit is alleged in the bill. The testimony of the magistrate and that of the son tends to establish a constructive or implied trust for the benefit of the father during his life, but assuming this to be sufficiently established, and to be capable of enforcement in this proceeding, the testimony shows such trust has been fully performed.

The decree of the Circuit Court will be reversed, and the bill will be dismissed with costs to the appellant above and below.

*Decree reversed.*

(Decided November 15th, 1900.)