473 A.2d 32

**ANNAPOLIS MALL LIMITED PARTNERSHIP**

v.

**YOGURT TREE OF ANNAPOLIS, INC.**

**No. 50, Sept. Term, 1983.**

Court of Appeals of Maryland.

April 5, 1984.

---

David D. Freishtat, Silver Spring (Shulman, Rogers, Gandal, Tobin & Ecker, P.A., Silver Spring, on the brief), for appellant.

Jonathan A. Azrael, Baltimore (Azrael & Gann, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

RODOWSKY, Judge.

This case is a summary ejectment action which was removed from the District Court of Maryland to a circuit court by a prayer for jury trial. The principal question is whether the tenant may defend on the ground of mutual mistake in the sense that, had the written lease expressed what the tenant contends to have been the true agreement of the parties, no rent would have been due to the landlord for the period in dispute. For reasons hereinafter set forth, we shall hold that the defense is not available at law, without the written instrument first having been reformed in equity. Undoubtedly proponents of the merger of law and equity will point to this holding as another marcher in a parade of horribles emanating from the niceties of this state's present system of modified common law pleading.[1]

Appellant, Annapolis Mall Limited Partnership (Annapolis Mall), owns a regional shopping center. Appellee, Yogurt Tree of Annapolis, Inc. (Yogurt Tree), leased approximately 1390 square feet in the shopping center for a term in excess

---

1. By amendments to Art. IV of the Maryland Constitution adopted at the general election in November of 1980, separate courts in Baltimore City, including separate law and equity courts, were abolished, and the Circuit Court for Baltimore City was created. This constitutional change has considerably facilitated implementing adoption of a unitary civil action. By its 82nd report this Court's Standing Committee on Rules of Practice and Procedure has recommended new rules for civil proceedings in circuit courts. 10:10 Md.R.S–1 *et seq.* (May 13, 1983). Proposed new Rule 2–301 would establish "one form of action known as 'civil action.'"

of ten years by a written lease dated May 13, 1981. Article II of that lease, in relevant part, reads:

> The commencement date, which shall be confirmed by an exchange of letters between Landlord and Tenant shall be the earlier of the following dates:
>
> (a) The date upon which Tenant opens for business in the demised premises; or
>
> (b) July 1, 1981.

Among the various documents which comprise the lease is a twenty-page segment containing printed, general provisions. These include an integration clause.

After making certain improvements to the demised premises, Yogurt Tree opened for business on December 18, 1981. On June 14, 1982 Annapolis Mall brought a summary ejectment action in the District Court of Maryland, at Annapolis, pursuant to Md.Code (1974, 1981 Repl.Vol.), § 8–401 of the Real Property Article.[2] Essentially Annapolis Mall's posi-

---

**2.** Section 8–401 in relevant part provides:

(a) *Right to repossession.*—Whenever the tenant under any lease of property . . . shall fail to pay the rent when due and payable, it shall be lawful for the landlord to have again and repossess the premises so rented.

(b) *Complaint; summons.*—Whenever any landlord shall desire to repossess any premises to which he is entitled under the provisions of § 8–401(a), he . . . shall make his written complaint . . . before the District Court . . . and praying by warrant to repossess the premises, together with judgment for the amount of rent due and costs. The District Court shall issue its summons, directed to any constable . . . and ordering him to notify by first-class mail the tenant . . . to appear before the District Court at the trial to be held on the fifth day after the filing of the complaint, to answer the landlord's complaint to show cause why the prayer of the landlord should not be granted . . . .

(c) . . . .

(2) If, when the trial occurs, it appears to the satisfaction of the court, that the rent, or any part of the rent, is actually due and unpaid, the court shall determine the amount of rent due and enter a judgment in favor of the landlord for repossession of the premises. The court may also give judgment in favor of the landlord for the amount of rent determined to be due together with costs of the suit if the court finds that the actual service of process made on the defendant would have been sufficient to support a judgment in an action in contract or tort.

tion was that, beginning July 1, 1981, Yogurt Tree was to pay minimum rent and additional rent, consisting of various shopping center charges. Annapolis Mall sought repossession and also back rent, in an amount later specified to be $17,364.66. This claim represented the period from July 1, 1981 through January 30, 1982, with one month's minimum rent, paid in advance, credited to July of 1981.

On June 19, 1982 Yogurt Tree filed a prayer for jury trial in the District Court. Jurisdiction was thereby "transferred forthwith" to the Circuit Court for Anne Arundel County. *See* Md.Code (1974, 1980 Repl.Vol.), § 4–402(e)(2) of the Courts and Judicial Proceedings Article (Courts Article). In the circuit court the action was placed on the law docket. The first indication on the record that Yogurt Tree claimed that there was a mutual mistake in the commencement date provision of the lease was at trial on November 18, 1982.

Theodore Edlow (Edlow), president of Yogurt Tree, testified that he originally began negotiations with Annapolis Mall's leasing agent in October of 1979. Unwilling to proceed because of his financial situation at the time, Edlow interested his cousin, Melvin Kabik (Kabik), in operating at the subject location. A form of lease was prepared by Annapolis Mall and furnished to Kabik in October 1980; but Kabick lost interest and never delivered a signed lease to Annapolis Mall. The provision for commencement date in the proposed lease to Kabik in part read that

> such commencement date shall be contingent upon the Issuance to Tenant of any required use and occupancy permit. If Tenant is unable to secure such permit by commencement date, the commencement date shall be extended until such time as said Use and Occupancy Permit [is] obtained from the appropriate governmental authorities.

---

(3) The court, when entering the judgment, shall also order the tenant to yield and render possession of the premises to the landlord ... within two days after the trial.

Then Edlow again became interested in the location. He obtained a copy of the lease proposed to Kabik and read it. He resumed negotiations with the leasing agent. These concentrated on two aspects of the lease other than the commencement date. After those features were resolved to Edlow's satisfaction, the landlord prepared the documents. Edlow testified that he made certain that the two, specially discussed features were correctly stated in the papers and that he simply scanned the other provisions of the lease and signed it. Over objection from the landlord, Edlow testified that the rental agent for Annapolis Mall had assured him that the lease which he would get would be "the same lease as originally negotiated with [Kabik]" with the exception of the two changes.

Annapolis Mall unsuccessfully moved for a directed verdict. The jury was instructed on mutual mistake and the case submitted on written, special interrogatories. The first of these asked: "When do you find that payment of the rent commenced, July 1, 1981 or December 18, 1981?" In answer the jury filled in the latter date. Pursuant to the jurors' response to another special interrogatory, judgment was entered in favor of Annapolis Mall for $1,406.16. From that judgment Annapolis Mall appealed. We issued the writ of certiorari on our own motion prior to consideration of the case by the Court of Special Appeals.

In its brief Annapolis Mall makes three points:

1. Testimony directed to proving mutual mistake concerning a term of the lease was not admissible;

2. In an action of summary ejectment inquiry is limited to whether rent was due according to the terms of the lease and, if so, whether it was paid; and

3. "The court erred in allowing the issue of mutual mistake to go to the jury since it is in the nature of equitable relief and was not allowable in an action at law."

Yogurt Tree does not directly join issue on each of the points raised by the landlord; rather, the tenant in substance presents the following arguments:

1. Because Annapolis Mall neither objected to the use of special interrogatories nor excepted to the instructions to the jury, it has failed to preserve for appellate review the question of whether a mutual mistake was properly presented to the jury;

2. There was legally sufficient evidence to support a finding of mutual mistake under the law relating to that doctrine; and

3. Mutual mistake may be asserted as a defense to the instant action.

### (1)

■ The threshold issue is whether Annapolis Mall has lost the right to appellate review of the claimed error. In this connection Yogurt Tree attempts to redefine the landlord's position to one objecting to jury consideration of the mutual mistake issue. If properly viewed in that light, lack of objection by Annapolis Mall to the use of special interrogatories and the absence of any exception to instructions concerning mutual mistake would take on significance. However, Annapolis Mall's point is much broader. It is that mutual mistake may not be shown at all in an action of summary ejectment. This position has been sufficiently preserved.

In the course of the trial, the earliest effort by Yogurt Tree to elicit evidence tending to prove mutual mistake occurred on cross-examination of the witness called by Annapolis Mall to prove nonpayment of rent. When that cross-examination began to move into negotiations before execution of the May 18, 1981 lease, counsel for Annapolis Mall requested a conference at the bench. In the course of an extended colloquy the landlord took the position that evidence relating to prior negotiations would not be admissible for two reasons: (1) Summary ejectment actions were by statute limited to consideration of whether rent was due and unpaid; and (2) proof of negotiations preceding the written lease were barred by the parol evidence rule. At the conclusion of all of the evidence Annapolis Mall moved for a

directed verdict "on the basis that there has been no evidence whatsoever presented by the defendant to rebut the presumption that is given to the plaintiff in presenting the case, that the rent is due [and] owing." While the reason given in support of the motion is not articulated with clarity, it sufficiently embraced the landlord's position, more fully expressed earlier in the trial, that the issues in summary ejectment are very limited so that a defense of mutual mistake in the terms of a written lease may not be presented in such an action.[3]

### (2)

In admitting testimony from Edlow, the only object of which was to show that the written lease did not evidence the true agreement of the parties, the trial court erred. Edlow sought to show that rent was to start when Yogurt Tree opened for business while the written lease unambiguously fixes the commencement date at the earlier of July 1, 1981 or the date upon which Yogurt Tree opened for business. Edlow's testimony violates the parol evidence rule. It was legally incompetent, in this action, to prove that the agreement was contrary to that clearly expressed in the writing.

> [I]n the absence of duress, fraud, or mistake, parol evidence of conversations before or at the time of the execution of a contract must be excluded. Of course, the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proved by parol, if under the circumstances of the case it may be properly inferred that the parties did not intend the written contract to be a complete and final statement of the whole

---

**3.** Thus we do not reach the question of whether, without any party having raised the point, we would address on our own motion contract reformation by a law court based on mutual mistake. But *see Creamer v. Helferstay*, 294 Md. 107, 113, 448 A.2d 332, 335 (1982) (authority of law court to rescind contract decided, although not raised by parties.)

transaction between them. [*Freeman v. Stanbern Construction Co.,* 205 Md. 71, 77–78, 106 A.2d 50, 54 (1954).] And *see Housing Authority of College Park v. Macro,* 275 Md. 281, 340 A.2d 216 (1975); *Markoff v. Kreiner,* 180 Md. 150, 23 A.2d 19 (1941). Among the decisions in this Court rejecting attempts in actions at law to vary by parol the terms of integrated written leases are *Kikas v. Baltimore County,* 200 Md. 360, 89 A.2d 625 (1952); *Bank v. Hurst Estate,* 187 Md. 333, 50 A.2d 133 (1946); *Phoenix Pad Manufacturing Co. v. Roth,* 127 Md. 540, 96 A. 762 (1916).

■ However, the rule is otherwise in an action in equity to reform the written instrument because of mutual mistake. Such a case was *Hoffman v. Chapman,* 182 Md. 208, 34 A.2d 438 (1943). There we said:

It is a settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement. [citations omitted.] It is a general rule of the common law that parol evidence is inadmissible to vary or contradict the terms of a written instrument. [citations omitted.] But equity refuses to enforce this rule whenever it is alleged that fraud, accident or mistake occurred in the making of the instrument, and will admit parol evidence to reform the instrument, even though it is within the Statute of Frauds. [citations omitted.] [*Id.* at 210, 34 A.2d at 439.]

The only basis on which Yogurt Tree contends that Edlow's evidence was admissible over the objection of Annapolis Mall is that it tended to prove mutual mistake. However, the action *sub judice* is not a bill in equity to reform the May 13, 1981 lease. Accordingly the evidence was not admissible in this law action.

(3)

■ Yogurt Tree nevertheless contends that an equitable defense, or a counterclaim on equitable grounds, may be

entertained at law.  In support the tenant cites decisions from other states.  It also quotes the following passage from 13 S. Williston, *A Treatise on the Law of Contracts* § 1598A (W. Jaeger 3d ed. 1962):

> [T]he power of equity to reform contracts is being more and more borrowed by courts of law in fact, although not in name, for the result attained by a court of equity may frequently be reached by a court of law by simply admitting evidence of the actual intention of the parties and enforcing the bargain which the parties intended to make.
>
> And this is true of a defense which must be supported by showing a mistake which would justify reformation, whether asserted in the form of a counterclaim for reformation, or merely as an equitable defense.  [Footnotes omitted.]

Maryland law is different from the Williston proposition.

When Yogurt Tree demanded a jury trial, jurisdiction over this summary ejectment action transferred by operation of § 4–402(e)(2) of the Courts Article to the Circuit Court for Anne Arundel County.  By a time no later than the receipt by the circuit court of the District Court record, this case became an "action" in the circuit court.  Maryland Rule 5 a defines "action" to "include all steps by which a party seeks to enforce any right in a court of law or equity." "Court," as defined in MD.R. 5 i, excludes the District Court unless expressly otherwise provided.  Interpretation of the Maryland Rules "to affect the existing distinction between law and equity" is proscribed by Rule 1 d.

Having converted Annapolis Mall's summary ejectment case into a circuit court action on the law side, Yogurt Tree now essentially contends that the court at law could determine that the lease should be reformed, that it could skip over the step of actual reformation and that it could apply the lease, *as if reformed,* in defense of the claim for rent. The only provision in Maryland practice which superficially appears to authorize, at law, that which Yogurt Tree seeks is the special plea on equitable grounds recognized in Rule 342

d 1.[4]  However, decisions applying this rule and its predecessor statute have established that it does not embrace reformation based on mutual mistake.

Provision for asserting equitable defenses in actions at law was first made by Chapter 547 of the Acts of 1888. *Nydegger v. Gitt,* 125 Md. 572, 94 A. 157 (1915) involved that statute.  There a landlord sued a tenant for rent in a contract action.  One of the defendant's pleas was on equitable grounds and asserted that the lease did not represent the intention of the parties at the time of its execution.  Judgment for the landlord was affirmed.  Because the covenant in the written lease respecting payment of the money was clear and explicit, parol evidence was not permitted.  The plea on equitable grounds did not set up a defense to the action.  This Court said:

> It has been settled by repeated decisions of this Court, that the statute allowing equitable pleas, did not enlarge the jurisdiction of courts of law, so as to confer upon them the power of cancelling and reforming contracts.  *Taylor v. State,* 73 Md. 208 [20 A. 914];  *Conner v. Groh,* 90 Md. [674,] 684 [45 A. 1024];  *Whitaker v. McDaniel,* 113 Md. 388 [78 A. 1].  [*Id.* at 578, 94 A. at 159.]

The principle is also illustrated by *Housing Authority of College Park v. Macro, supra,* 275 Md. 281, 340 A.2d 216.  The builder of a turnkey housing project sued for $25,000 which the purchaser had withheld from the contract price.  That amount represented the cost of ranges and refrigerators which had not been furnished by the builder.  The builder's declaration alleged that the written contract mistakenly contained a provision requiring the builder to furnish those appliances, whereas in fact the parties had agreed that that obligation should be excluded from the agreement.

---

4.  Subparagraph (a) of Rule 342 d 1 reads:
    A party to any action at law in which he, if judgment were obtained, would be entitled to relief against such judgment on equitable grounds, may plead the facts which entitle him to such relief by way of defense.

We vacated judgment for the builder and suggested that on remand the matter be transferred under Rule 515 to the equity side of the circuit court. Judge Digges, writing for the Court, explained (275 Md. at 286, 340 A.2d at 219):

However, as there has been no merger of law and equity in this jurisdiction, while it is not appropriate for a circuit court, convened at law, to receive parol evidence concerning a contract and then to reform that agreement by deleting those provisions which the evidence shows would not be there if it were not for inadvertence and mistake [citations omitted], if the action were brought as one in equity the parol evidence rule will not present a hurdle to the parties' seeking to vary the terms of the contract by reforming it . . . .

*Accord, Creamer v. Helferstay, supra,* 294 Md. at 115 n. 10, 448 A.2d at 336 n. 10. *Cf., Adamstown Canning & Supply Co. v. Baltimore & Ohio R.R. Co.,* 137 Md. 199, 210, 112 A. 286, 290 (1920) (specific performance of promise to release not available at law under plea on equitable grounds); *Conner v. Groh,* 90 Md. 674, 683, 45 A. 1024, 1026 (1900) ("Courts of Law . . . have no power to reform contracts alleged to have been procured by fraud."); *Baltimore Sugar Refining Co. v. Campbell & Zell Co.,* 83 Md. 36, 56, 34 A. 369, 372 (1896) (cancellation and reformation referred to as distinctively and exclusively equitable remedies).

Because the instant case is decided on the inability of a circuit court at law to reform a written instrument, it is unnecessary for us to address Annapolis Mall's argument that the scope of a summary ejectment proceeding is limited to issues of whether rent is due and unpaid. Annapolis Mall also argues, as part of its contention that the trial court erred in admitting testimony of mutual mistake, that there was no mutual mistake as a matter of law because the alleged mistake was unilateral. The reason assigned by Annapolis Mall to support its motion for directed verdict did not include this ground. A contention that, as a matter of law, Yogurt Tree's proof established only unilateral mistake was advanced by Annapolis Mall in its motion for judgment

*n.o.v.* That type of motion is governed by Rule 563 a 1. It permits a party whose motion for a directed verdict at the close of all the evidence was denied to move to have the verdict and any judgment entered thereon set aside "and to have judgment entered in accordance with his motion for a directed verdict . . . ." Thus, the grounds which may be advanced for a judgment *n.o.v.* are limited to those advanced in support of the motion for directed verdict. *See Seven Provinces Insurance Co. v. Commerce & Industry Insurance Co.,* 65 F.R.D. 674, 686 (W.D.Mo.1975); *C. Albert Sauter Co. v. Richard S. Sauter Co.,* 368 F.Supp. 501, 509 (E.D.Pa.1973), both applying Fed.R.Civ.P. Rule 50(b) under which the motion for judgment *n.o.v.* is also one "to have judgment entered in accordance with [the party's] motion for a directed verdict . . . ." As pointed out in 5A J. Moore, Moore's Federal Practice ¶ 50.08 at 50–88 (2d ed. 1982) the requirement prevents sandbagging. A movant for a directed verdict is not permitted to withhold a supporting reason until after the verdict when the case may no longer be reopened in order to cure a deficiency in the proof.

The judgment entered below must be vacated and the matter remanded for further proceedings. In the event Yogurt Tree brings a bill in equity to seek reformation of the commencement date provision of the lease, further proceedings in this action at law may include consideration of any request which might be made for a stay pending the final determination of that action in equity.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY YOGURT TREE OF ANNAPOLIS, INC.