*Copinol Restaurant, Inc. v. 26 North Market LLC*, No. 43, September Term, 2024, Opinion by Booth, J.

**LANDLORD-TENANT LAW—TENANT HOLDING OVER, RP § 8-402**

The tenant holding over statute, Real Property Article § 8-402, does not apply where a tenant is in possession of real property pursuant to a lease for a term that has not expired.

**LANDLORD-TENANT LAW—LEASE TERMS THAT PURPORT TO GIVE LANDLORD THE AUTHORITY TO USE A STATUTORY REMEDY**

A landlord may not contractually modify the phrase "expiration of a lease," as that term is used in the tenant holding over statute, RP § 8-402, to avail himself or herself of the tenant holding over statute in order to recover possession of property where the parties are subject to a lease that has not expired, and the landlord elects to terminate the lease for the tenant's nonpayment of rent.

IN THE SUPREME COURT

OF MARYLAND

---

No. 43

September Term, 2025

---

COPINOL RESTAURANT, INC.

v.

26 NORTH MARKET LLC

---

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

---

Opinion by Booth, J.
Watts, J., joins in judgment only.

---

Filed: July 11, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Maryland General Assembly has created a judicial process, known as a "tenant holding over action," which allows a landlord to obtain a judgment for restitution of possession of real property from the District Court of Maryland, upon the "expiration of a lease," after providing statutory notice to a tenant who remains in possession. Md. Code Ann., (2023 Repl. Vol.) Real Prop. ("RP") § 8-402. We issued a writ of certiorari in this case to determine: (1) whether the tenant holding over action applies when a tenant is in possession of property pursuant to a lease for a term of years that has not expired; and if not, (2) whether a landlord may contractually modify the phrase "expiration of a lease," as that term is used in RP § 8-402, to avail itself of the tenant holding over statute in order to recover possession of property where the parties are subject to a lease that has not expired, and the landlord elects to terminate the lease for the tenant's nonpayment of rent.

As we discuss more fully herein, 26 North Market LLC, Respondent ("North Market" or "Landlord"), and Copinol Restaurant, Inc., Petitioner ("Copinol" or "Tenant"), are parties to a commercial lease for a term that expires on March 31, 2032, unless terminated sooner pursuant to the terms of the lease. After Copinol failed to pay rent by the due date in the lease, North Market terminated the lease and provided written notice to vacate. Copinol failed to vacate the premises, and North Market filed a tenant holding over action in the District Court of Maryland sitting in Frederick County. Copinol asserted that North Market could not bring a tenant holding over action because the statute has no application when the tenant is in possession of property pursuant to a lease that has not expired. North Market disagreed and argued that under the terms of the commercial lease, it was entitled to bring such an action upon the tenant's breach of a lease for non-payment,

and the landlord's election to terminate the lease. The District Court agreed with North Market and granted it a judgment of possession of the property. Copinol appealed. The Circuit Court for Frederick County initially ruled in Copinol's favor; however, after North Market filed a motion to alter or amend judgment, the circuit court affirmed the District Court's judgment awarding possession to North Market.

Copinol filed a petition for writ of certiorari, which this Court granted. We held oral argument on May 6, 2025. On May 23, 2025, we issued a per curiam order reversing the order issued by the circuit court and remanding the case to the circuit court for entry of judgment in favor of Copinol.

In our order, we held that: (1) the lease had not expired; (2) the tenant holding over statute establishes a statutory mechanism that enables a landlord to regain possession of property by virtue of the landlord's reversionary interest, which is available after "the expiration of a lease"; and (3) that the parties do not have the authority to contractually modify the statutory meaning of the phrase "expiration of a lease" in RP § 8-402, thereby enabling a landlord to avail itself of remedies available under the tenant holding over statute in a manner inconsistent with its plain language. We now explain the basis for that order.

**I**

**Factual Background**

*A. Commercial Lease*

North Market and Copinol entered into a commercial lease agreement dated December 31, 2003, in which Copinol agreed to rent the premises, located at 26 North Market Street, Frederick, Maryland, from North Market. Thereafter, the parties executed

2

an "Amended and Restated Lease Agreement" dated March 27, 2014, for a term of ten years. On May 1, 2022, the parties executed a "First Amendment to Amended and Restated Lease Agreement," which increased the rent and extended the term for an additional 10 years, with an expiration date of March 31, 2032, "unless the Lease is sooner terminated in accordance with the terms and provisions of the Lease." We shall collectively refer to these agreements as the "Lease."

Copinol operated the Cacique Restaurant at the premises. We touch upon some of the notable provisions of the Lease that are relevant to the instant dispute. The Lease established an annual minimum rent, which was payable in monthly installments, defined in the Lease as "Minimum Rent." In addition to the minimum monthly rent, Copinol was responsible for all taxes and insurance, which the Lease included as "Additional Rent." Each monthly installment of the Minimum Rent and the Additional Rent were due on the first day of the month. Section 4.2 of the Lease provides that if the payment of the Minimum Rent and Additional Rent "shall be in arrears, in whole or in part, for five (5) or more days, then such failure shall be an Event of Default hereunder and Landlord may elect to pursue such remedies as are set forth herein." Although the Lease requires Landlord to provide notice and an opportunity to cure for non-monetary defaults, no notice is required where Tenant's breach arises from the failure to pay rent.[1] Section 9.2 addresses the Landlord's remedies in the event of a default for failure to pay rent, stating in pertinent part:

_____

[1] Section 9.1 of the Lease Agreement states:

Tenant agrees that Tenant shall perform all covenants contained in this Lease and that it shall promptly, upon receipt of written notice specifying action

3

If the Rent shall be in arrears in whole or in part for five (5) or more days . . . the covenant to pay Rent herein shall be considered breached by Tenant. If Tenant shall be in breach of any of the covenants set forth in this Lease, Landlord may at its option, after having given notice set forth below, and if Tenant after such notice shall fail to remedy such breach as set forth below, reenter the Leased Premises without the need for resort to judicial proceedings, and declare this Lease and the tenancy hereunder terminated, and Landlord shall be entitled to the benefit of all provisions of the law respecting the speedy recovery of lands and tenements held over by tenants or proceedings in forceable entry and detainer.

Finally, Section 14.7 of the Lease governs circumstances in which Tenant holds over at the end of the lease term and gives Landlord the right to bring summary proceedings to recover possession of the premises and damages in the amount of two times the amount

---

desired by Landlord and required by said covenants (with no notice by Landlord being required in the case of nonpayment of Rent), comply with such notice. If Tenant shall not promptly [within ten (10) days of mailing of notice in the case of non-monetary defaults] begin performance and diligently thereafter pursue the same and comply with such notice then Landlord may, at its option, enter the Leased Premises and take whatever actions are specified in said notice, and/or terminate this Lease and the tenancy created hereby. Tenant agrees to pay promptly, upon demand, any reasonable expense incurred by Landlord in taking the action required by said notice. Tenant's failure to perform all covenants contained within this Lease, including, without limitation, the failure of Tenant to pay any Rent described hereunder shall be consider and deemed an Event of Default.

Section 9.5, which governs notice requirements in the event of a breach of the Lease, states:

In the event Landlord determines that Tenant shall be in breach in the performance of any of the covenants on its part to be performed hereunder (except for the payment of Rent, in which case no notice shall be required), Landlord shall be required to give written notice thereof to Tenant. Tenant shall have ten (10) days following the mailing of such written notice to cure the breaches described in such notice . . . . There shall be no notice requirements required or grace periods allowed (other than those specifically applicable to payment of Rent) in the case of a breach of this Lease by Tenant for nonpayment of Rent (Minimum and Additional).

4

of the Minimum Rent payable at the end of the term, as well as the Additional Rent during the period of the holdover.[2]

### B. Copinol's Failure to Make Timely Rent Payments

Copinol made renovations to the premises in 2023. On April 25, 2023, Copinol's representative, Jose Perez, sent North Market's President, Paul DiFrancesco, an email advising that, because of the costs of the renovations, Copinol would not be able to pay rent for the month of May. On May 11, 2023, North Market mailed Copinol a letter captioned "Notice of Lease Termination and Notice to Quit," in which North Market stated that it was terminating the Lease based upon Copinol's late payment of rent for May

---

[2] Specifically, the tenant holding over provisions in the Lease Agreement state as follows:

> **Section 14.7. <u>Holding Over.</u>** Tenant agrees to vacate the Leased Premises at the end of the Term, and Landlord shall be entitled to the benefit of all summary proceedings to recover possession of the Leased Premises at the end of the Term, as if statutory notice had been given. If Tenant remains in possession of the Leased Premises after the expiration of the Term, such action shall not renew the Lease by operation of law and nothing herein shall be deemed as a consent by Landlord to Tenant's remaining in the Leased Premises. If Tenant fails to vacate the Leased Premises as required, Landlord may consider Tenant as either: (i) a "Tenant-at-Will" liable for the payment of two (2) times the monthly Minimum Rent payment for the month preceding the expiration of the Term for each and every calendar month (or any portion thereof) during which Tenant continues to occupy the Leased Premises; or (ii) as a "Tenant-Holding-Over" liable for an amount equal to the actual damages incurred by Landlord as a result of Tenant's holding over, including, without limitation, all incidental, prospective and consequential damages and attorneys' fees, but in no event shall such amount be less than the amounts of: (a) two (2) times the Minimum Rent payable at the end of the Term as aforesaid; plus (b) the Additional Rent reserved hereunder applicable to the period of the holdover. In either event, all other covenants of this Lease shall remain in full force and effect until such time as Tenant vacates the Leased Premises and thereafter as set forth in this Lease.

pursuant to Section 9.1 of the Lease and that it was giving Copinol until June 30, 2023, to vacate the premises. North Market sent a second letter on July 24 extending the period in which Copinol was to vacate until September 30. North Market explained in its July 24 letter that it was providing a revised notice because of a change in the tenant holding over statute, which changed the notice provision from 30 days' to 60 days' written notice "before the expiration of the tenancy."[3] As we discuss below, although Copinol did not make its May or June rent payments by the respective due dates, Copinol paid the rent in full for both months, as well as the accrued late fees, by June 16. Copinol did not vacate the premises, which led to the underlying litigation.

## II

## Procedural History

### A. Tenant Holding Over Action

On October 5, 2023, North Market filed a tenant holding over complaint pursuant to RP § 8-402 in the District Court sitting in Frederick County. Based upon the language of the preprinted form complaint,[4] the complaint alleged that Copinol "occupied the premises as a periodic tenant or unlawfully holds the premises after the expiration of the lease." The complaint stated that the monthly rent was $11,503.75 per month, and that North Market served written notice on Copinol on July 25 directing Copinol to vacate the

---

[3] *See* 2021 Md. Laws, Ch. 803.

[4] The District Court's form complaint is titled "COMPLAINT AND SUMMONS AGAINST TENANT HOLDING OVER (Real Property § 8-402)," DC-CV-080 (Rev. 10/2023).

6

premises and to deliver possession of the premises to North Market on September 30. North Market sought restitution of the possession of the premises and damages in the amount of $57,518.75, plus attorney's fees in an amount to be determined. The Frederick County Sheriff's Office served Copinol on October 17 by posting a copy of the complaint and summons at the premises.

The parties appeared for trial on November 13, 2023. Before the court heard the case, Copinol's counsel made a preliminary motion asserting that North Market's tenant holding over complaint was improper because the Lease did not expire until 2032.[5] In response, counsel for North Market asserted that, under the terms of the Lease, the lease provisions permitted Landlord to terminate the Lease without notice upon Tenant's breach for failure to pay rent, which had the effect of changing the Lease's expiration date. North Market asserted that, upon Copinol's breach, it terminated the Lease—and that the Lease therefore "expired" because it no longer existed. Copinol's counsel disagreed and asserted that, although North Market could seek repossession based upon a breach of lease, it could not unilaterally change the Lease expiration date to utilize the statutory remedy provided under the tenant holding over statute.

The District Court took Copinol's motion under advisement and proceeded with a trial. Mr. DiFrancesco testified on North Market's behalf. The following documents were admitted into evidence: (1) the Lease; (2) the Notice of Lease Termination and Notice to

---

[5] Although Copinol's counsel did not state that Copinol was moving to dismiss the case, it is clear from the arguments of counsel for both parties and the court's response that the parties and the court were treating the preliminary arguments as a motion to dismiss.

Quit letters dated May 11, 2023, and July 24, 2023; (3) North Market's tenant ledger for Copinol, showing the amounts and dates of payments made by Copinol from January 3, 2023, until October 2, 2023; and (4) an email exchange between Mr. Perez and Mr. DiFrancesco that occurred between April 25, 2023 and May 8, 2023.

In response to questions of counsel, Mr. DiFrancesco referenced the sections of the Lease that set forth: (1) the lease term; (2) the amount of the monthly rent; (3) the time for making payment; (4) the amount of late fees authorized; (5) the notice requirements (and lack thereof when the default arose from the nonpayment of rent); (6) Landlord's remedies upon default; and (7) Landlord's right to recover twice the amount of the Minimum Rent during the hold over period, as well as the right to recover attorneys' fees if Tenant holds over.

Mr. DiFrancesco testified that he had received an email from Mr. Perez, dated April 25, 2023, advising that Copinol would not be able to pay the rent in May because of problems arising from the renovations.[6] North Market's tenant ledger reflected that the rent payments for May and June were not paid within the five-day grace period provided

---

[6] The April 25, 2023 email from Mr. Perez to Mr. DiFrancesco, which was admitted into evidence, stated:

> I am writing to inform you that Cacique Restaurant will be unable to make this month's rent payment. We have been unexpectedly closed for several months due to permitting delays. We have been working diligently to get the permits we need to finish work and reopen, but the process has been slow and frustrating.
>
> We understand that this is a serious matter, and we apologize for any inconvenience it may cause. We are committed to reopening Cacique Restaurant as soon as possible, and we will keep you updated on any progress.

for in the Lease; however, the rent for those months, as well as the late fee in the amount of $695.86 for each month, had been paid in full by June 16. The ledger reflected that monthly rent payments for July through October had been paid in full and on time, and there was no balance due and owing as of October 2.

Mr. DiFrancesco testified that, in the past, he had many issues with the tenant and highlighted some of them for the court.[7] Mr. DiFrancesco testified that he sent two letters—dated May 11 and July 24—advising Copinol that it was terminating the Lease for failure to timely pay the rent for May. Mr. DiFrancesco also testified that, in addition to seeking a judgment of possession of the premises, he was also seeking hold over damages in the amount of $57,518.75 (pursuant to the hold over provisions in Section 14.7 of the Lease allowing for two times the amount of the monthly rent during the hold over period), plus attorney's fees in the amount of $12,708.25.

After Mr. DiFrancesco testified, Copinol's counsel moved for judgment, once again asserting that North Market could not bring a tenant holding over action under RP § 8-402 because of the existence of an unexpired lease. Copinol's counsel asserted that the case should have been filed as a breach of lease proceeding under RP § 8-402.1 to recover possession, which would have entitled his client to discovery. In response, North Market's

---

[7] Mr. DiFrancesco testified:

The basic problem with the tenants is they -- they disregard the lease entirely. They do whatever they want in the building. They -- there's been many defaults, a lot having to do with the damage of the building, the sewer – the sewer pipes. They changed the insurance requirements on -- on the building without notice. They did these -- these renovations without -- without permits. They've done other things without permits.

9

counsel directed the court to the language of the Lease that gave North Market the right to terminate the Lease for nonpayment and the right to seek possession of the premises in a tenant holding over action. After hearing arguments of counsel, the court denied the motion. The court pointed out that the Lease was a commercial lease, as opposed to a residential lease. The court reasoned that, although a landlord could not bring a tenant holding over action against a residential tenant for failure to pay rent because a residential tenant has "an absolute right to redeem," in the court's view, "[n]o such rights adhere to a commercial tenant" and, therefore, the tenant holding over statute was "totally appropriate."

After the court denied Copinol's motion, Mr. Perez testified on behalf of Copinol. He explained that he and his partners had desired to renovate the restaurant located on the premises. According to Mr. Perez, Copinol had discussed the renovation plans with North Market, and, in anticipation of the renovations, the parties had extended the lease term. He testified that the restaurant was closed for a period of time in the spring of 2023 because of the renovations. He stated that Copinol spent approximately $400,000 on the renovations, and "had some difficulties having the resources to pay the rent that was [due] in May." As a result, according to Mr. Perez, he emailed Mr. DiFrancesco advising him that Copinol would have difficulties paying the May rent. Mr. Perez testified that the renovations were completed by June 16, at which time the restaurant was open again to the public.

After hearing the testimony, the court entered a judgment of possession of the premises in favor of North Market, but it declined to award monetary damages because Copinol was never personally served, and its counsel had appeared solely for the purpose

10

of the in rem action.[8]  The court pointed out that North Market had a right to file a separate action for damages.[9]

## B. Circuit Court Appeal

Copinol timely appealed to the circuit court in November 2023.  The circuit court considered the appeal on the record.  Copinol asserted once again that North Market could not bring a tenant holding over action under RP § 8-402 because the statue does not apply when a lease has not expired.  After oral arguments in May 2024, the court entered a written order in September 2024, in which the circuit court vacated the District Court's judgment of possession, with instructions to dismiss the tenant holding over complaint.  The circuit court agreed with Copinol and ruled that the tenant holding over proceeding under RP § 8-402 was not available because the Lease had not expired.  The court determined that North Market should have filed a breach of lease action under RP § 8-402.1, which would have enabled the District Court to determine "whether the breach was substantial and whether it warrants eviction."

---

[8] The transcript of the proceeding states that counsel was present for an "interim action."  That appears to be a typographical error and should have said "in rem" action. The tenant holding over statute permits service by posting on the property by the Sheriff if the tenant or the tenant's authorized agent cannot be found.  Md. Code Ann. (2023 Repl. Vol.) Real Prop. ("RP") § 8-402(b)(1)(ii)(1)–(3).  However, where a nonresidential tenant is not personally served with the summons, the tenant is not "subject to personal jurisdiction of the court" if the tenant asserts that he or she is appearing "for the purpose of defending an in rem action prior to the time that evidence is taken by the court."  *Id.* § 8-402(a)(3)(iii).

[9] The tenant holding over statute states: "Any action to recover damages under this section may be brought by suit separate from the eviction or removal proceeding or in the same action and in any court having jurisdiction over the amount in issue."  RP § 8-402(a)(3)(i).

Thereafter, North Market filed a motion to alter or amend judgment. Copinol opposed the motion, and the court held another hearing. On October 22, 2024, the circuit court entered an opinion and order reversing its earlier decision. The circuit court affirmed the District Court's judgment and awarded possession to North Market. The court noted that the breach of lease proceeding under RP § 8-402.1 was unavailable to North Market because the breach involved the non-payment of rent. The court then analyzed the language of the Lease, and "reconsidered the effect of the language of the commercial contract" that purports to authorize North Market to file a tenant holding over action upon its termination of the Lease for the tenant's nonpayment of rent. Under this language, the court determined that North Market could file such an action. The circuit court noted that the District Court's record contained undisputed evidence that Copinol breached the Lease by failing to pay rent and that the "unambiguous language of the Lease authorizes both the termination of the Lease and a tenant holding over proceeding." As such, the circuit court determined that the District Court's decision was not clearly erroneous, granted North Market's motion, and awarded possession to North Market.

Copinol filed a petition for a writ of certiorari, which we granted to consider whether a landlord may contractually modify the phrase "expiration of a lease," as that term is used in RP § 8-402, to avail itself of the tenant holding over statute in order to recover possession of property where the tenant is in possession of property pursuant to a lease that has not expired, and the landlord elects to terminate the lease for the tenant's nonpayment of rent. For the reasons set forth more fully herein, we hold that: (1) the tenant holding over statute, RP § 8-402, has no application where the tenant is in possession of property pursuant to a

12

lease that has not expired; and (2) the landlord cannot contractually modify the phrase "expiration of a lease" to avail itself of statutory remedies in a manner inconsistent with the plain language of the statute.

## III

## Standard of Review

Pursuant to Maryland Rule 8-131(c), "[w]hen an action has been tried without a jury, an appellate court will review the case on both the law and the evidence." We conduct a *de novo* review of the trial court's application of Maryland statutory and case law. *Plank v. Cherneski*, 469 Md. 548, 569 (2020). Similarly, the interpretation of a written contract is also a question of law that is subject to *de novo* review. *Id.* at 616; *see also Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 392 (2019).

## IV

## Parties' Contentions

Copinol contends that the circuit court erred in ruling that North Market could bring a tenant holding over action under RP § 8-402, where the parties are subject to an unexpired lease. Copinol asserts that, under the plain language of the statute, as well as this Court's case law, a landlord cannot bring a tenant holding over action where an unexpired lease is in effect. According to Copinol, the parties cannot contractually modify the meaning of the term "the expiration of a lease" as that phrase is used in RP § 8-402.

For its part, North Market argues that it was authorized to file a tenant holding over action because the Lease, by its express terms, provided such a right if Copinol failed to pay rent by the due date. According to North Market, the Lease "expired" upon Copinol's

13

failure to pay timely rent and Copinol's refusal to vacate the Leased Premises after North Market provided notice to vacate the premises. North Market asserts that under the terms of the Lease, it was permitted to terminate the Lease and deem it "expired" prior to March 31, 2032, in the event of a default by Copinol, which included failure to pay timely rent. North Market posits that no Maryland court has held that "expiration of the lease," as that term is used in RP § 8-402, refers only to a lease "expiring" by "lapse of time," and points out that under the plain language of the statute, a tenant holding over action is available when a tenant unlawfully holds over "beyond the expiration of the lease *or* termination of the tenancy." North Market also argues that, without the ability to file a tenant holding over action, it will not have the ability to enforce the terms of the Lease. This is especially meaningful, North Market asserts, in the context of a commercial lease where parties traditionally have the freedom to negotiate the terms of the lease.

At the outset, we observe that this matter involves not only a question of contract interpretation, but also a question of statutory interpretation. Additionally, the type of contract in question—a lease instrument—occupies a special place in the common law, as well as the statutory law, given its status as both an executory contract and a conveyance of a leasehold estate in land. Accordingly, although the tenant holding over statute is at the center of the parties' dispute, we start our discussion with: (1) an overview of the common law origins of our landlord-tenant laws; (2) the common law remedies available to landlords seeking to recover possession of their property; and (3) the expedited statutory remedies that the General Assembly has established to provide landlords with the ability

to recover their possessory interest in real property where the elements of those statutes are established.

V

**Common Law and Statutory Background**

### A. *Landlord-Tenant Relationship Under the Common Law*

Landlord-tenant law, a subset of property law, can be traced back to the common law of England, and its roots are over 1,000 years old. *Chateau Foghorn LP v. Hosford*, 455 Md. 462, 489 (2017). "A landlord and tenant relationship arises when an individual occupies the real property of another with permission and for a consideration, which is usually in the form of the payment of rent." *Velicky v. Copycat Bldg. LLC*, 476 Md. 435, 448 (2021). The landlord-tenant relationship establishes a "tenancy" by which the tenant acquires a possessory interest in property.[10] There are three basic types of tenancies in landlord-tenant relationships: (1) a tenancy for a term;[11] (2) a periodic tenancy; and (3) a tenancy at will. Douglas M. Bregman, *Maryland Landlord-Tenant Law: Practice and Procedure* § 2.04 (Matthew Bender 4th ed. 2009 & Supp. 2020).

---

[10] *See Tenancy*, Black's Law Dictionary (11th ed. 2019) ("1. The possession or occupancy of land under a lease; a leasehold interest in real estate. 2. The period of such possession or occupancy . . . . 3. The possession of real or personal property by right or title[.]").

[11] A tenancy for a term is often referred to as a "a tenancy for a term of years." Douglas M. Bregman, *Maryland Landlord-Tenant Law: Practice and Procedure* § 2.04 (Matthew Bender 4th ed. 2009 & Supp. 2020). However, it does not need to be for a duration of years and is often something less than that. *See Tenancy for a Term*, Black's Law Dictionary (11th ed. 2019) ("A tenancy whose duration is known in years, weeks or days from the moment of its creation."). We shall refer to this tenancy simply as a "tenancy for a term."

15

A tenancy for a term is memorialized in a lease and "has a definite beginning, and the original term has a definite end." *Id.* § 2.04[1]. Unlike other types of tenancies, the termination date is stated at the commencement of the term. *Id.*

A periodic tenancy "is a tenancy commencing at a definite date which runs for a specific period and then renews itself for successive periods (which can be longer or shorter than the original), unless due and proper notice of termination is given by either party." *Id.* § 2.04[2].[12] A periodic tenancy is "implied by the law" when "one in possession of property by grant of the owner pays rent to the owner," and the owner accepts that payment of rent. *Annapolis Fire & Marine Ins. Co. v. Rich*, 239 Md. 573, 582 (1965) (quoting *Progressive Friendship Sav. & Loan Ass'n v. Rose*, 235 Md. 169, 174 (1964)).

A tenancy at will "is one of completely indeterminate duration." Bregman, *supra*, at § 2.04[3]. The tenancy's length is determined by the will of the parties and may cease at the election of either the landlord or the tenant. *Id.*[13]

A fourth type of tenancy—a tenancy at sufferance, is often listed as a landlord-tenant relationship. *Id.* § 2.04.[14] However, it "is not a true expression of a landlord-tenant

---

[12] *See also Periodic Tenancy*, Black's Law Dictionary (11th ed. 2019) ("A tenancy that automatically continues for successive periods—usu[ally] month to month or year to year—unless terminated at the end of the period by proper notice.").

[13] *See also Tenancy at Will*, Black's Law Dictionary (11th ed. 2019) ("A tenancy in which the tenant holds possession with the landlord's consent but without fixed terms (as for duration or rent); specif[ically] a tenancy that its terminable at the will" of either party.).

[14] *See Tenancy at Sufferance*, Black's Law Dictionary (11th ed. 2019) ("A tenancy arising when a person who has been in lawful possession of property wrongfully remains as a hold over after his or her interest has expired.").

relationship" because a "tenant at sufferance has no estate, is not in privity with the landlord, and thus cannot maintain an action in trespass against the landowner." *Id*. 2.04[4]. "The wrongful nature of the tenant's possession violates the consensual element of the basic landlord-tenant relationship—thus, a tenancy at will cannot exist." *Id*.

This case involves a tenancy for a term that is memorialized in the Lease. A lease instrument is both an executory contract and a conveyance of a possessory interest, which creates between the parties both privity of contract and of estate. *Italian Fisherman, Inc. v. Middlemas*, 313 Md. 156, 163 (1988); *Arthur Treacher's Fish & Chips of Fairfax, Inc. v. Chillum Terrace Ltd. P'ship*, 272 Md. 720, 727 (1974). Given the dual nature of the lease, "the obligations which the parties bear to each other may arise out of contract or from the real covenants of the leasehold estate, or sometimes from both." *Arthur Treacher's*, 272 Md. at 727. Typically, the tenant's "obligation to pay rent and taxes arises by virtue of both privity of estate and privity of contract." *Italian Fisherman, Inc.*, 313 Md. at 163.

As we observed in *Velicky*, all landlord-tenant tenancies are of limited duration and must come to an end. 476 Md. at 449. Where the tenant does not vacate the premises after the expiration of a lease for a term, there must be a judicial process which allows the peaceful and lawful transfer of the possessory interest back to the property owner. *Id.* at 449–50. In other circumstances, where the tenant is in possession of property pursuant to a lease that has not expired, or pursuant to another type of tenancy, such as a periodic tenancy, and breaches a covenant, the landlord may wish to terminate the tenancy and

17

regain possession. As discussed below, in either instance, the common law provides a means by which a landlord may recover possession of his or her property.

### B. Common Law Ejectment

The common law action of ejectment was created, and later expanded, to determine who had the right to possess land. *Brown v. Hous. Opportunities Comm'n of Montgomery County*, 350 Md. 570, 577–78 (1998). "Ejectment originated as a very narrow remedy," and was "designed to give the lessee of property a cause of action against anyone who ejected him, including his lessor."[15] *Pernell v. Southall Realty*, 416 U.S. 363, 373 (1974). Over time, common law ejectment evolved and "became the principal means employed by landlords to evict tenants for overstaying the terms of their leases, nonpayment of rent, or other breach of lease covenants." *Id.* In Maryland, a common law ejectment action "continued to be the only mode of recovering the possession of land" until 1870. *Martin v. Howard County*, 349 Md. 469, 482 n.9 (1998) (quoting 1 John Prentiss Poe, *Pleading and Practice in Courts of Common Law* § 258 (Tiffany ed. 1925)).

To prevail in a common law ejectment action, the plaintiff must establish the following: (1) that the plaintiff is entitled to possession, and (2) that someone else is in possession of the property without permission. *Fertitta v. Bay Shore Dev. Corp.*, 252 Md. 393, 398 (1969); *see also Lannay's Lessee v. Wilson*, 30 Md. 536, 546 (1869) (explaining that to succeed in an ejectment action under the common law, a plaintiff "must be clothed

---

[15] For a discussion of the early evolution of common law ejectment, see *Martin v. Howard County*, 349 Md. 469, 481–83, 482 n.9 (1998), and *Brown v. Housing Opportunities Comm'n of Montgomery County*, 350 Md. 570, 578–84, 578 n.2 (1998).

with both the *legal title*, and the immediate *right of possession*"); 4 Baxter Dunaway, *Law of Distressed Real Estate* § 57:35 (2025) ("The gravamen of an ejectment action is wrongful withholding of possession.").

Common law ejectment is a purely possessory action. *MKOS Props. LLC v. Johnson*, 264 Md. App. 465, 486 (2025); *see also Velicky*, 476 Md. at 479 (explaining that when a party brings a common law ejectment claim, the party is "seeking repossession of its possessory interest"); *Glorius v. Watkins*, 203 Md. 546, 549 (1954) (stating that where the "object of a proceeding is to obtain possession, the remedy is ejectment"). There is no notice requirement, and the landlord's subjective reasons for seeking possession are not relevant. It is an action at law to which a right to a jury trial attaches if the requisite amount in controversy is satisfied.[16] *Martin*, 349 Md. at 482–83 ("An action by or on behalf of a landlord to evict a tenant, on the ground that the tenant no longer is entitled to possession,

---

[16] Article 23 of the Maryland Declaration of Rights guarantees a right to a jury trial in actions at law where the requisite amount in controversy is satisfied. As we noted in *Martin*, "[a]lthough we have largely abolished the procedural differences between actions at law and actions in equity," the distinctions are still important for determining when the constitutional right to a jury trial attaches. 349 Md. at 488. To that end, "the particular relief sought in an action often determines whether the action is equitable or legal in nature." *Id.* at 489. In the landlord-tenant context, we explained, for example, that if the defendant-tenant allegedly engaged in activity that constituted a nuisance:

> If the relief requested is an order requiring the defendant to stop engaging in the activity, the action is equitable. If the [landlord] requests money damages, or if a [landlord] not in possession requests an order ousting a tenant from possession of the property, the actions are legal, and there is a constitutional right to a jury trial.

*Id.*

19

and to restore possession to the landlord, is historically an action at law to which the right to a jury trial has always attached in this State." (Citation modified)).

Maryland case law is replete with examples of common law ejectment actions brought by landlords seeking repossession of property arising from the tenant's failure to pay rent, taxes, or some other sum in a timely manner. *See, e.g.*, *Chertkof v. Southland Corp.*, 280 Md. 1, 4–5 (1977); *Dreisonstok v. Dworman Bldg. Corp.*, 264 Md. 50, 52–53 (1971); *Streeter v. Middlemas*, 240 Md. 169, 171–72 (1965); *Wylie v. Kirby*, 115 Md. 282, 285 (1911); *Carpenter v. Wilson*, 100 Md. 13, 18 (1904); *Morrison v. Smith*, 90 Md. 76, 82 (1899); *Rose & Crown, Ltd. v. Shaw Enters.*, *Inc.*, 28 Md. App. 548, 549 (1975).

Where a landlord, through an ejectment proceeding, seeks a forfeiture of a leasehold interest arising from the breach of a covenant to pay rent, taxes, or other assessments, the tenant may seek equitable relief from the court to enjoin the proceeding.[17] *Brown*, 350 Md. at 582.

In *Wylie v. Kirby*, this Court articulated the equitable principles that governed circumstances where a lessee sought to restrain an action of ejectment instituted by the lessors for the nonpayment of an installment of rent or other charge by the stipulated due date in the lease. 115 Md. at 286–87. In that case, the lease provided the landlord with the right to terminate the lease if the tenant failed to make a timely payment. *Id.* at 283. The tenant inadvertently failed to timely pay rent as a result of a bookkeeping error. *Id.* at 285.

---

[17] "Provision for asserting equitable defenses in actions at law was first made by Chapter 547 of the Acts of 1888." *Annapolis Mall Ltd. P'ship v. Yogurt Tree of Annapolis, Inc.*, 299 Md. 244, 254 (1984).

When the error was discovered, the tenant tendered a rent check, but the lessor declined to cash it and brought an action of ejectment. *Id.* The tenant brought a suit in equity to restrain the landlord's ejectment action. *Id.* at 283. The circuit court restrained the attempted forfeiture based on principles of equity, which this Court affirmed. *Id.* at 289.

This Court pointed out the "established doctrine that equity will grant relief from a forfeiture, where such a condition is provided to secure the payment of money, as in the case of a right of re-entry for the nonpayment of rent at the time designated in the lease."[18] *Id.* at 286. This Court then proceeded to describe these equitable principles as follows:

> Where a lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, it is well settled that a Court of equity will relieve the lessee and set aside a forfeiture incurred by his breach of the condition, whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money.

*Id.* (quoting 1 Pomeroy's Eq. Jur. § 453). We explained, however, that equitable relief was unavailable where the forfeiture is incurred by the tenant's willful and culpable neglect,

---

[18] In our explanation of the equitable relief that may be available in such circumstances, the Court quoted Justice Story's observation of the rationale behind the principle:

> In reason, in conscience, in natural equity, there is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act, he shall suffer an enormous loss wholly disproportionate to the injury to the other party.

*Wylie v. Kirby*, 115 Md. 282, 287 (1911) (quoting Story's Equity Jur. §§ 1314–1316 (13th ed.)).

instead of an omission "occasioned by inevitable accident." *Id.* (quoting 2 Taylor on Landlord and Tenant § 496). We observed that

> the general rule to be applied to all such cases seems to be that courts of equity will [provide relief] where the omission and subsequent forfeiture are the result of mistake or accident and the injury and inconvenience arising from it are capable of compensation; but where the transaction is wilful, or the compensation impracticable, they invariably refuse to interfere.

*Id.* (quoting 2 Taylor on Landlord and Tenant § 496). Cases from this Court reflect how tenants' requests for equitable relief have been considered under the facts and circumstances of particular cases. *See, e.g.*, *Streeter*, 240 Md. at 175–76 (upholding circuit court's award of forfeiture and denying the tenant's request to restrain the forfeiture where tenant failed to make timely rent and tax payments and holding that the circuit court was entitled to consider the tenant's former breaches of rent payments); *Evergreen Amusement Corp. v. Pacheo*, 218 Md. 230, 232–35 (1958) (holding that a lease of an open-air movie theater was properly forfeited for nonpayment of rent where the tenant was insolvent to such a degree that it would be unjust to the landlords to enjoin the forfeiture, notwithstanding that there was a tender of all that was due and owing and an offer by the father of the stockholder of the corporate tenant and the officer of the corporate tenant to pay all that was due to the landlords,); *Dreisonstok*, 264 Md. at 60–61 (reversing a circuit court's decree awarding a tenant equitable relief from a forfeiture and reinstating a jury's verdict in favor of a landlord in an ejectment action where a tenant failed to comply with the terms of the lease by failing to pay taxes when they became due—instead waiting until the day after a tax sale would have been held but for the landlord's intervention—and concluding that such action "was calculated, deliberate, wilful, persistent, and violated the

fundamental principles of fair dealing"); *Carpenter*, 100 Md. at 21–23 (holding that equity would not permit a landlord to declare a forfeiture of a lease where the tenant failed to timely pay water rent because the landlord did not demand payment prior to declaring a forfeiture and the tenant had made extensive improvements with the expectation of buying the property pursuant to an option in the lease).

### C.  British Enactment of 4 Geo. II, Ch. 28

As we noted in *Brown*, the English common law ejectment action "became cumbersome, time-consuming, and subject to bullying and delay tactics by the tenant," including the tenant's ability to obtain injunctions in the equity court.  350 Md. at 579.  As a result, in 1731, British Parliament enacted 4 Geo. II, Ch. 28, which created a process to rectify the difficulties associated with a lessor's attempts to regain possession under certain circumstances.  The enactment: (1) required a tenant willfully holding over after the termination of a lease to pay rent in an amount equivalent to double the yearly value of the property and authorized landlords to recover that rent through a debt action; and (2) permitted landlords the right of reentry for nonpayment of rent where the lease provided that right, and to proceed in ejectment without the need for formal demand for the rent and action for fictional reentry upon the land by merely posting notice, whenever rent was six months in arrears.  *Brown*, 350 Md. at 579 (citing 4 Geo. II, Ch. 28).  The tenant could halt the ejection action directly only by paying or tendering to the landlord, or paying into court, all rent in arrears and costs.  *Id.*  The court was prohibited from issuing or continuing an injunction unless, within 40 days after a landlord filed an answer in the equity action, the

tenant deposited the full amount of rent that the landlord swore was due with the proper officer. *Id.*

### D. Maryland's Codification of Expedited Remedies Available to Landlords

The English statute, 4 Geo. II, Ch. 28, was incorporated into Maryland law in 1775 through Article 5 of the Maryland Declaration of Rights. *Brown*, 350 Md. at 579. Over the course of the next 200 years, the General Assembly codified portions of the English statute to create three distinct expedited statutory remedies whereby a landlord may regain possession of property that is subject to a leasehold interest or where the leasehold interest has expired. As we explained in *Velicky*, the "three statutes involve distinct scenarios whereby a landlord may regain possession to property, each containing different elements and processes." 476 Md. at 452. "Two of the three statutes—failure to pay rent (RP § 8-401) and breach of lease (RP § 8-402.1)—are based upon the contractual relationship between the landlord and tenant and involve a tenant's breach of covenant, which *may* give rise to a landlord's right to a writ of possession, depending upon certain statutory conditions and limitations." *Id.* "The third statute—the tenant holding over statute (RP § 8-402)—is only available where a contract has *expired*." *Id.* The landlord must prove "four requisite elements—prior possession, a lease that has expired, proper notice to quit, and the tenant's refusal to vacate—the landlord is entitled to a judgment of restitution, subject to the provisions for appeal." *Id.* at 452–53 (quoting *Brown*, 350 Md. at 580).

Although the tenant holding over statute is the statutory mechanism at issue in this case, we discuss all three statutes and their interrelationships. We do so because when we are confronted with a question of statutory interpretation, we interpret the language of the

24

statute in the context of the broader statutory scheme of which it is a part. *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024).

### 1. Tenant Holding Over, RP § 8-402

"At common law," tenancies for a term "required no notice of termination and automatically expired at the end of the stated term." Bregman, *supra*, at § 9.05. "A tenant remaining beyond the stated term became a tenant at sufferance and, depending upon the express or implied intent of the landlord, could become a tenant at will, a periodic tenant, or a tenant for an entirely new term co-extensive with the original term." *Id.*

"In 1793, the General Assembly enacted what it termed a 'summary mode' of recovering possession of land from holdover tenants." *Brown*, 350 Md. at 580 (citing 1793 Md. Laws, Ch. 43). The statute "provided that, in any tenancy for years or at will, if, upon the expiration of the lease[,] the landlord gave written notice to quit and the tenant refused, the landlord, after one month, could file suit to recover possession." *Id.* A jury was to be summoned within four days. *Id.* "[I]f the jury found that a valid lease had been made and expired[,] and the proper notice had been given, the court was authorized to issue a warrant to the sheriff directing him to deliver possession to the landlord and to enter a judgment for costs." *Id.*

The 1793 statute, with subsequent amendments added over the years, evolved into what is now RP § 8-402(b). *Brown*, 350 Md. at 580. From the enactment of the 1793 statute, continuing to the present holding over statute, the landlord's right to regain possession of the landlord's property after the expiration of a lease has been conditioned only upon the landlord providing the tenant with written notice to quit. *Velicky*, 476 Md.

25

at 457 (*comparing* Art. 53, § 1 of the Code Pub. Gen. Laws 1904 *with* RP § 8-402(b)(1)(ii)(2)).

"The tenant holding over statute modifies the common law in two respects." *Id.* "First, with some exceptions[,]" "it establishes a periodic month-to-month tenancy for a holdover tenant who remains on the premises with the consent of the landlord after the expiration of a lease." *Id.* at 457–58 (citing RP § 8-402(d)). "Second, it requires that a landlord provide 60 days' written notice of the landlord's intent to terminate a tenancy prior to taking action to regain possession." *Id.* at 458 (citing RP § 8-402(b)(1)(i)).

The key statutory provision of the tenant holding over statute, which we discuss in more detail *infra*, is subsection (a)(1), which identifies the type of tenant who is liable to the landlord for damages under this section. It states: "*A tenant under any periodic tenancy, or at the expiration of a lease*, and someone holding under the tenant, *who shall unlawfully hold over beyond the expiration of the lease or termination of the tenancy,* shall be liable to the landlord for the actual damages caused by the holding over." RP § 8-402(a)(1) (emphasis added).

If the tenant refuses to vacate the property "after the expiration of the term for which it was leased" and after the landlord has satisfied the statutory notice requirements, the landlord may file a tenant holding over complaint in the District Court to regain possession of the property. *Id.* § 8-402(b)(1)(i). Once the complaint is filed, the court "shall issue" a summons ordering a qualified law enforcement official "to notify the tenant, assignee, or subtenant to appear on a day stated in the summons before the court to show cause why

26

restitution should not be made to the landlord." *Id.* § 8-402(b)(1)(ii). Pretrial discovery is not permitted in a tenant holding over proceeding. Md. Rule 3-711.

Upon filing of the complaint and notice required by the statute, the court "shall thereupon give judgment for the restitution of the possession of said premises" to the landlord upon finding that: (1) "the landlord had been in possession of the leased property[;]" (2) the "tenancy is fully ended and expired[;]" (3) "due notice to quit . . . [has] been given to the tenant or person in possession[;]" and (4) "that the tenant or person in possession [has] refused so to do[.]" RP § 8-402(b)(2)(i).

Although tenant holding over actions are purely possessory, the landlord may request a judgment against the tenant or the person in actual possession "for the actual damages caused by the holding over." *Id.* § 8-402(a)(1). The damages "may not be less than the apportioned rent for the period of holdover at the rate under the lease." *Id.* § 8-402(a)(2). Additionally, "[a]ny action to recover damages" may be recovered in the tenant holding over proceeding, or in a separate action and "in any court having jurisdiction over the amount in issue." *Id.* § 8-402(a)(3)(i).

If the court enters judgment in favor of the landlord, the tenant has 10 days to file a notice of appeal in the circuit court. *Id.* § 8-402(b)(2)(ii). The "appellate court shall, upon application of either party, set a day for the hearing of the appeal, not less than 5 nor more than 15 days" after the application for appeal, and the order setting the hearing "shall be served on the opposite party or that party's counsel at least 5 days before the hearing." *Id.* § 8-402(b)(2)(iv).

27

Unlike the breach of lease action, *id.* § 8-402.1, which we discuss more fully below, in a tenant holding over action, the court has no authority to consider equitable factors or alternative remedies before awarding possession to the landlord. *See Brown*, 350 Md. at 580 (noting that "there is no caveat in § 8-402 comparable to that in § 8-402.1"). Instead, the tenant holding over statute mandates that the court enter a judgment of restitution for the landlord provided that the landlord has proven the four requisite elements—prior possession, a lease that has expired, proper notice to quit, and the tenant's refusal to vacate. *Id.*

Finally, it is worth noting that General Assembly did not intend for the tenant holding over statute to be the exclusive remedy available to a landlord where a tenant holds over beyond the term and after notice. *See* RP § 8-402(a)(4) (stating that "[n]othing contained herein is intended to limit any other remedies which a landlord may have against a holdover tenant under the lease or under applicable law").

### 2. *Summary Ejectment Action, RP § 8-401*

The right of a landlord to recover possession upon the nonpayment of rent continued under 4 Geo. II, Ch. 28 until 1872. *Brown*, 350 Md. at 580. In that year, the General Assembly enacted a law permitting landlords having the right of reentry for nonpayment of rent to sue in ejectment to recover possession of the leased premises whenever a half-year's rent was in arrears, without formal demand or reentry, but only after giving notice. 1872 Md. Laws, Ch. 346. For the first time, the 1872 law permitted landlords to recover not only possession, but also "mesne profits and damages" caused by the ejectment and detention of the premises, up to the time of the adjudication of the case. *Brown*, 350 Md.

28

at 581. However, the tenant had the ability to seek relief in equity within six months after execution of the judgment of restitution, without any limitation. *Id.*

The current format for RP § 8-401 originated from a statute that was enacted in 1937. 1937 Md. Laws, Ch. 529. This action, often called a "summary ejectment action," arises pursuant to a contractual relationship between the landlord and tenant, and it is based upon the tenant's failure to abide by his or her contractual obligation to pay rent. Summary ejectment "is a powerful tool" that allows a landlord to repossess a leased premises as well as "collect unpaid rent in an efficient and expedient manner." *Assanah-Carroll v. Law Offs. of Edward J. Maher P.C.*, 480 Md. 394, 431 (2022). As we recently observed, the summary ejectment action "is unlike any other litigation procedure in Maryland[,]" due to a combination of factors, including, among others, (1) "its speed (trial must be held within six days of filing absent unanimous agreement to postpone further)," (2) "the absence of a requirement of personal service," (3) "the lack of opportunity for pretrial discovery," (4) "the allowance for one side to be represented in court by non-lawyers," and (5) "the short window for appeal (four days)[.]" *Westminster Mgmt., LLC*, 486 Md. at 624.

A landlord may initiate a summary ejectment action "[w]henever the tenant or tenants fail to pay the rent when due and payable[.]" RP § 8-401(a). A landlord does so by filing a complaint in the District Court of Maryland describing the property, naming the tenants, "[s]tating the amount of rent and any late fees due and unpaid," and requesting to repossess the premises. *Id*. § 8-401(b)(2). The landlord must also "specify the amount of rent due for each rental period under the lease, the day that the rent is due for each rental period, and any late fees for overdue rent payments." *Id.* § 8-401(b)(3).

The summons directs the tenant to appear in the District Court for a trial on the fifth day following the filing of the complaint. *Id.* § 8-401(b)(4)(i). The court may adjourn the trial for one day to permit either party to procure necessary witnesses in "the interests of justice[,]" but it may not adjourn the trial for a period of longer than one day unless all parties consent. *Id.* § 8-401(e)(1). Pretrial discovery is not permitted. Md. Rule 3-711.

At trial, the tenant must "show cause" as to why the landlord should not prevail. RP § 8-401(b)(4)(ii). If the court determines "that the rent, or any part of the rent and late fees are actually due and unpaid," the court must determine the amount of rent and late fees due at the time the complaint was filed. *Id*. § 8-401(e)(2)(ii). In the case of a non-residential tenancy,[19] "if the court finds that there was such service of process or submission to the jurisdiction of the court as would support a judgment in contract or tort,"[20] the court may enter judgment in favor of the landlord for: (1) "[t]he amount of rent and late fees determined to be due;" (2) "[c]osts of the suit; and" (3) "[r]easonable attorney's fees, if the lease agreement authorizes the landlord to recover attorney's fees." *Id.* § 8-401(e)(2)(v). The court is also required to award possession to the landlord, or the landlord's attorney or agent, within four days after trial. *Id.* § 8-401(e)(3).

---

[19] RP § 8-401 treats non-residential leases differently from residential leases in several respects, including the ability to collect attorneys' fees and the type of service required to obtain a money judgment. Because this case concerns a commercial lease, our discussion is limited to the applicable law governing non-residential leases.

[20] The statute states that "[a] nonresidential tenant who was not personally served with a summons shall not be subject to personal jurisdiction of the court if that tenant asserts that the appearance is for the purpose of defending an in rem action prior to the time that evidence is taken by the court." RP § 8-401(e)(2)(vi).

30

Because the summary ejectment action is based solely upon the tenant's obligation to pay rent, if at the trial, or at the adjournment of the trial, the tenant tenders to the landlord the rent and late fees due, along with the costs of the suit, the court must enter the complaint "as being satisfied." *Id.* § 8-401(e)(5).

If the tenant does not comply with the court's order awarding possession to the landlord within four days, the landlord may request, and the court must issue, a warrant of restitution directing a qualified county official to deliver possession of the property to the landlord, including removing the tenant's belongings from the property "by force if necessary[.]" *Id.* § 8-401(f)(1)(i). However, "at any time before actual execution of the eviction order," the tenant has a statutory right to redeem the premises by tendering to the landlord "all past due amounts," plus court awarded costs and fees. *Id.* § 8-401(g)(1); *see also Velicky*, 476 Md. at 454. The tenant's statutory right of redemption of the premises is not unlimited—if the tenant has had three judgments of possession within the previous 12 months, the tenant no longer has a right of redemption. RP § 8-401(g)(3).

Either party may appeal the judgment of the District Court to the circuit court within four days from the entry of judgment. *Id.* § 8-401(h)(1). If the tenant appeals, the tenant must furnish a bond to stay execution of the judgment. *Id.* § 8-401(h)(2)–(3).

### 3. *Breach of Lease Action Arising Pursuant to RP § 8-402.1*

Finally, we turn to the third expedited statutory process that enables a landlord to regain possession of property—RP § 8-402.1—which is commonly referred to as the

"breach of lease" action.[21] RP § 8-402.1 provides a statutory remedy that allows a landlord to recover a leased premises in the event of a breach of lease other than for nonpayment of rent. *Brown*, 350 Md. at 577.

RP § 8-402.1 was initially enacted in 1978. 1978 Md. Laws, Ch. 478. In *Brown*, we looked to the legislative history to explain the rationale behind its enactment. 350 Md. at 582–84. We explained that, prior to the enactment of the breach of lease statute, where the tenant's breach involved a covenant *other than* a failure to pay rent (thereby foreclosing the ability to use RP § 8-401), the landlord's only ability to recover possession of the premises was by filing a common law ejectment action, which was subject to the tenant's right to seek equitable relief. *Id.* at 583–84. To avoid the common law ejectment action and the tenant's attendant right to seek equitable relief, landlords began using the tenant holding over action in an attempt to recover possession in circumstances where the alleged breach of the lease did not involve a failure to pay rent. *Id.* at 583. We noted that the impetus for a legislative change came from the District Court Ad Hoc Committee on District Court Constables. *Id.* In a letter dated January 25, 1977, Judge Alpert, on behalf of that committee, proposed certain legislation, including an addition to RP § 8-402 "providing for an action for breach of lease." *Id.* Judge Alpert noted that "[a]ggrieved landlords have been filing these actions on tenant holding over forms when they are not, in

---

[21] As we explained in *Ben-Davies v. Blibaum & Associates, P.A.*, although an action for breach of contract between a landlord and tenant is based on a breach of a lease agreement, the phrase "an action for breach of lease" is a term of art used to describe the statutory cause of action provided in RP § 8-402.1, which is "distinct from an action for breach of contract." 457 Md. 228, 252 (2018).

32

reality, tenant holding over actions." *Id.* (alteration in original). Senate Bill 964 was introduced a month later in apparent response to Judge Alpert's letter. *Id.* It did not pass, but a modified version of it was introduced in the next session as Senate Bill 570, which was enacted as RP § 8-402.1. 1978 Md. Laws, Ch. 478.

In *Brown*, we explained that the General Assembly's "clear" intent was "to create a separate, self-contained District Court procedure by which landlords could recover possession of leased premises based on breaches of covenants other than the payment of rent[.]" 350 Md. at 584. We explained that the "General Assembly was not content to have the practice of using § 8-402 continued, but neither did it intend to leave landlords only to the common law action of ejectment." *Id*.

Like a summary ejectment action under RP § 8-401, the statutory breach of lease action, RP § 8-402.1, is based upon a contract between the parties. The statutory action is only available where: (1) the lease has not expired; and (2) the lease contains an express term stating that the landlord may repossess the premises prior to the expiration of the term. *Id.* § 8-402.1(a)(1)(i). Breach of lease actions are purely possessory in nature—there is no provision in RP § 8-402.1 that permits a landlord to recover rent or damages.

Before filing suit, the landlord must give the tenant 30 days' written notice that the tenant is in violation of the lease and that the landlord desires to repossess the leased premises. *Id.* § 8-402.1(a)(1)(i)(2)(A). If the tenant or person in actual possession refuses to comply with the notice, the landlord may file a complaint in the District Court, and "[t]he court shall summons immediately the tenant or person in possession to appear before the court on a day stated in the summons to show cause, if any, why restitution of the

33

possession of the leased premises should not be made to the landlord." *Id.* § 8-402.1(a)(1)(ii). Unlike summary ejectment actions and tenant holding over actions, the limited discovery that is generally allowed in District Court actions is available in statutory breach of lease actions. *Hudson v. Hous. Auth. of Balt. City*, 402 Md. 18, 34 (2007).

The court shall award possession to the landlord only if the court "determines that the tenant breached the terms of the lease and that the breach was substantial and warrants an eviction," RP § 8-402.1(b)(1), meaning that a tenant does not automatically forfeit his or her rights under the lease due to a technical breach. Instead, as we explained in *Brown*, the General Assembly fashioned the statutory remedy upon: "(1) the long-standing principle that forfeitures for breach of covenant were not a matter of right but were subject to the intervention of equity when regarded as unfair or inappropriate, and (2) the availability of alternative remedies for landlords in breach of covenant cases, such as damages and equitable relief." 350 Md. at 584. Under the express language of the statute, "[t]he court is entitled, and indeed directed, to weigh all of the relevant factors before declaring a forfeiture and evicting the tenant, including the actual loss or damage caused by the violation at issue, the likelihood of future violations, and the existence of effective alternative remedies for past or existing violations." *Id.*

If the court determines that the tenant has breached the terms of the lease and that the breach is substantial and warrants eviction, it shall enter judgment of restitution in favor of the landlord. RP § 8-402.1(b)(1). Either party may appeal the judgment to the circuit court within ten days of the entry of judgment. *Id.* § 8-402.1(b)(2). "Upon application of either party, the court shall set a day for the hearing of the appeal not less than five nor

34

more than 15 days after the application, and notice of the order for a hearing shall be served on the other party or that party's counsel at least five days before the hearing." [22] *Id.*

### E. The District Court's Exclusive Original Jurisdiction Over Expedited Statutory Processes

We next discuss the District Court's exclusive original jurisdiction over the above-described expedited statutory procedures. The District Court of Maryland is a court of limited jurisdiction. *See* Md. Const. Art. IV, § 41A ("The District Court shall have the original jurisdiction prescribed by law."). Section 4-401 of the Courts and Judicial Proceedings Article ("CJ") of the Maryland Annotated Code specifies that "the District

---

[22] We focus on the trilogy of expedited remedies codified in RP §§ 8-401, 8-402, and 8-402.1 because they have become the primary tools utilized by landlords where the landlord can satisfy the statutory requirements to obtain relief. By focusing on these three remedies, we do not suggest that they are the only means by which a landlord may obtain judicial relief. As we noted in *Velicky*, where the landlord is unable to satisfy the statutory requirements, the landlord may have other remedies at his or her disposal, such as common law ejectment. *See* 476 Md. at 452; *id.* at 483–84 (McDonald, J., dissenting); *id.* at 496–97 (Watts, J., dissenting) (the majority and dissenting opinions all noting that common law ejectment, which is not an expedited remedy, remains part of the law of Maryland); 4 Baxter Dunaway, *Law of Distressed Real Estate* § 57:34 (2025) (observing that common law ejectment "proves most useful in the situation where the person seeking eviction is unable to or has failed to abide by the strict statutory requirements of a summary statute"). Where applicable, a landlord may file a statutory action for distress for rent, which is governed by RP §§ 8-301 to 8-332. In an action for distress for rent, a landlord may seek possession of the premises, as well as any goods on the premises, in order to secure the payment of overdue rent. *See* RP §§ 8-305(a), 8-324(c); *see also Ben-Davies*, 457 Md. at 252–54. In addition, a landlord may bring a common law action for breach of contract seeking damages where a tenant breaches the lease, *see Ben-Davies*, 457 Md. at 252, and may also be entitled to declaratory relief, *see Schultz v. Kaplan*, 189 Md. 402, 409–10 (1947) ("It does not seem inconsistent in an action of ejectment to seek declaratory relief and an adjudication of the rights of the parties under the lease here before the court. The declaratory judgment act is available, where appropriate, whether separately sought or sought in combination with the procuring of an executory judgment or decree.").

Court has exclusive original civil jurisdiction in . . . action[s] involving landlord and tenant, distraint, or wrongful detainer, regardless of the amount involved[.]"

In *Greenbelt Consumer Services, Inc. v. Acme Markets, Inc.*, we addressed the meaning of the phrase "action involving landlord and tenant." 272 Md. 222, 227 (1974). In that case, the landlord brought a claim to recover unpaid rent against a tenant who had already vacated the subleased premises. *Id.* at 223. After conducting a statutory construction analysis, this Court determined that actions "involving landlord and tenant" encompassed "only those possessory in rem or quasi in rem actions that provide[] a means by which a landlord might rapidly and inexpensively obtain repossession of his [or her] premises situated in this State or seek security for rent due from personalty located on the leasehold." *See id.* at 227–29 (noting that if the statute had instead stated "an action involving *a* landlord and *a* tenant," the District Court's jurisdiction would be "practically limitless" and reasoning that the phrasing "an action involving the *landlord-tenant relationship*" would render the separate mention of actions for distraint, forcible entry, and detainer superfluous (emphasis added)). We then held that CJ § 4-401(a) encompasses the following possessory actions: (1) summary ejectment proceedings in RP § 8-401; (2) distraint actions authorized by RP §§ 8-301 to 8-332; and (3) actions for forcible entry and detainer, including actions for tenant holding over under RP § 8-402. *Greenbelt Consumer*, 272 Md. at 230. We also concluded that the District Court does not have subject matter jurisdiction "to render a judgment in excess of the [jurisdictional monetary] limit when it is instituted in a contract claim independent of one of the possessory actions" previously

36

described.[23]  *Id*. at 230–31.  In *Ben-Davies v. Blibaum & Associates, P.A.*, we reiterated that "CJ § 4-401(4) does not extend the District Court's jurisdiction to actions for breach of contract between landlords and tenants where the amount in controversy exceeds the District Court's statutory maximum."  457 Md. 228, 267–68 (2018) (citing *Greenbelt Consumer*, 272 Md. at 230).

Finally, we note that a party to a landlord-tenant action has a constitutional right to a jury trial where a claim for monetary damages or the value of the right to possession exceeds the statutory amount.  *Bringe v. Collins*, 274 Md. 338, 346–47 (1975).

### F.  The Expedited Statutory Remedies and the Balancing of Interests

As reflected above in our discussion about the trilogy of expedited statutory remedies, they work together to provide the landlord with certain tools at his or her disposal where the landlord can satisfy the statutory requirements, depending upon the circumstances that led the landlord to seek a judgment of possession.  They embody the General Assembly's policy judgments, which carefully balance the landlord's interests in regaining possession in a swift and efficient manner and the tenant's interests in ensuring

---

[23] In *Williams v. Housing Authority of Baltimore City*, we revised the meaning of "involving landlord and tenant."  361 Md. 143, 157–58 (2000).  We stated that the list of actions involving "landlord and tenant" set forth in *Greenbelt Consumer* was incomplete. *Williams*, 361 Md. at 157.  We determined that rent escrow actions, regardless of whether in rem or quasi in rem, are "property-specific and must be brought in the District Court[.]" *Id*. at 158.  We similarly concluded that actions for breach of implied warranty of habitability, regardless of the amount of damages, must be brought in the District Court because the action is "tied to the property and the lease" and provides a similar remedy to rent escrow actions.  *Id*.  Thus, rent escrow actions and breach of warranty claims also fall within the District Court's jurisdiction under § 4-401(4) of the Courts and Judicial Proceedings Article ("CJ") of the Maryland Annotated Code.

that any forfeiture of the tenancy is fair and equitable. On the one hand, the landlord may regain possession of his or her property more efficiently than having to resort to a common law ejectment action and without the possibility that the tenant will be entitled to equitable relief. The expedited process occurs in the District Court and with no discovery (except in the instance of a breach of lease action). The trade-off is that the tenant has certain statutory protections. For example, where the forfeiture arises from a failure to pay rent, the tenant has a right of redemption up to three times within a 12-month period. Where the forfeiture arises from a breach of a covenant other than for nonpayment of rent, the landlord must establish that the breach is "substantial and warrants eviction" before a judge can order a forfeiture of the property. These statutory protections afforded to the tenant serve as a substitute for the common law equitable relief that a tenant would otherwise be entitled to seek in the context of a forfeiture arising from a landlord's common law ejectment action.

In contrast to the statutory protections afforded to tenants who are subject to unexpired leases, the tenant holding over after the expiration of a lease has no such protections. The landlord is entitled to a judgment of possession by simply establishing that the lease has expired, the tenant remains in possession, and statutory notice has been given.

Against this common law and statutory background, we turn to the parties' contentions.

# VI

## Discussion

In this case, we are asked to determine: (1) whether the General Assembly intended the holding over statute to apply where the tenant is occupying property pursuant to a lease that has not expired by lapse of time; and (2) if not, whether a landlord can, by contract, avail itself of statutory remedies in a manner inconsistent with the plain language of the statute. The first question requires that we apply our traditional canons of statutory interpretation.

Our ultimate objective "is to extract and effectuate the actual intent of the Legislature in enacting the statute." *Goshen Run Homeowners Ass'n, Inc. v. Cisneros*, 467 Md. 74, 107 (2020) (quoting *Reier v. State Dep't of Assessments & Tax'n*, 397 Md. 2, 26 (2007)). The starting point of the statutory analysis is the plain language of the statute, which we view in the context of the statutory scheme to which it belongs. *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024); *see also Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 169 (2021). "Our review of the text is wholistic, seeking to give effect to all of what the General Assembly included and not to add anything that the General Assembly omitted." *Westminster Mgmt., LLC*, 486 Md. at 644. "In our analysis of statutory text, we therefore take the language as we find it, neither adding to nor deleting from it; we avoid 'forced or subtle interpretations'; and we avoid constructions that would negate portions of the language or render them meaningless." *Id.* (quoting *Wheeling v. Selene Fin. LP*, 473 Md. 356, 377 (2021)); *see also Lockshin v. Semsker*, 412 Md. 257, 275 (2010); *Koste v. Town of Oxford*, 431 Md. 14, 25–26 (2013). "When statutory terms are undefined, we often look to

39

dictionary definitions as a starting point, to identify the ordinary and popular meaning of the terms, before broadening our analysis to consider the other language of the provisions in which the terms appear and the statutory scheme as a whole, including any legislative purpose" that we can discern from the statutory text. *Westminster Mgmt., LLC*, 486 Md. at 644 (citation modified). "Presuming the General Assembly 'intends its enactments to operate together as a consistent and harmonious body of law,' we also 'seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.'" *Id*. at 644–45 (quoting *Wheeling*, 473 Md. at 377).

After we exhaust the tools at our disposal for our textual analysis, viewed in the context of the statutory scheme and in light of its apparent legislative purpose, we next consider whether the statute is ambiguous. *Id.* at 645. Ambiguity can arise in two different ways: (1) where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or (2) where the words are clear and unambiguous when viewed in isolation but become ambiguous when read as part of a larger statutory scheme. *Comptroller v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 380 (2022). "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resorting to other rules of construction." *Wheeling*, 473 Md. at 377 (quoting *Lockshin*, 412 Md. at 275).

Finally, "[i]n every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Id.* (quoting *Lockshin*, 412 Md. at 276). "When one interpretation of statutory language would produce such a result, we will reject that interpretation in favor of another that does not suffer the same flaw."

40

*Westminster Mgmt., LLC*, 486 Md. at 646; *see also Nationstar Mortg. LLC*, 476 Md. at 170 (explaining that "it is important to consider the consequences of alternative interpretations of the statute, in order to avoid constructions that are illogical or nonsensical, or that render a statute meaningless" (citation modified)).

### A.    The Tenant Holding Over Statute Does Not Apply Where a Tenant Occupies Property Pursuant to a Lease for a Term That Has Not Expired

North Market asserts that no Maryland case has held that the phrase "expiration of a lease," as that term is used in the tenant holding over statute, refers *only* to a lease "expiring" by a lapse of time.  North Market argues that under its plain language, the tenant holding over statute may be utilized by the landlord when (1) a lease has expired due to lapse of time; *or* (2) the lease is properly terminated pursuant to its terms.  For the following reasons, we disagree with this interpretation and hold that, where a tenant occupies property pursuant to a lease for a term, the tenant holding over statute applies only where the lease has "expired" by lapse of time.

As discussed above, we are not writing on a clean slate.  In other cases, we have explained that the tenant holding over statute has no application where the parties are subject to an unexpired lease.  *See Velicky*, 476 Md. at 456–57 (stating that the tenant holding over statute, unlike the summary ejectment and breach of lease statutes, "is *not* based upon an ongoing contractual relationship between the landlord and tenant and a tenant's breach."  Rather, it provides a statutory mechanism "that enables a landlord to regain possession upon the *expiration of a lease* by virtue of his or her reversionary interest."); *Brown*, 350 Md. at 580 (noting that to recover possession in a tenant holding

41

over action, the landlord must prove, among other things, "a lease that has expired"). We reaffirm these statements and determine that they are consistent with the unambiguous, plain language of the statute and the comprehensive statutory framework governing the landlord-tenant relationship. Moreover, North Market's interpretation would lead to an illogical result whereby landlords could utilize RP § 8-402 to circumvent the other expedited statutory processes, RP § 8-401 and 8-402.1, both of which contain statutory protections for the tenant.

Starting with the plain language, RP § 8-402(a)(1) states:

A tenant *under any periodic tenancy, or at the expiration of a lease*, and someone holding under the tenant, who shall unlawfully hold over *beyond the expiration of the lease or termination of the tenancy*, shall be liable to the landlord for the actual damages caused by the *holding over*.

(Emphasis added). North Market directs us to the phrase "termination of the tenancy" to support its position that it was entitled to: (1) declare Copinol to be in breach of the Lease for failure to pay by the due date, (2) "terminate the tenancy" by giving Copinol notice, and (3) file a tenant holding over action. We disagree.

The first clause of the sentence refers to different types of tenancies—a tenant occupying property: (1) pursuant to a "periodic tenancy" "*or*" (2) "at the expiration of a lease[.]" (Emphasis added). The General Assembly uses the word "or" again when it refers to a tenant "who shall unlawfully hold over beyond the expiration of the lease *or* termination of the tenancy[.]" (Emphasis added). The use of the disjunctive word "or" in these instances reflects the General Assembly's awareness that the landlord-tenant relationship can consist of more than one type of tenancy.

42

Where a tenant occupying property pursuant to one of these types of tenancies "unlawfully hold[s] over beyond the expiration of the lease or termination of the tenancy," he or she is "liable to the landlord for the actual damages caused by the holding over." Notably, the legal definition of "holding over" means "[a] tenant's action in continuing to occupy the leased premises *after the lease term has expired*." *Holding Over*, Black's Law Dictionary (11th ed. 2019) (emphasis added).

To reach North Market's interpretation of the phrase "termination of the tenancy," we would not only need to ignore the fact that the section specifically references two types of tenancies in the disjunctive, but we would also need to re-write the statute by substituting the word "termination" for "expiration"—to say that a tenant is holding over where he or she is in possession at the "*termination* of a lease" instead of at the "*expiration* of a lease." The second option would be to treat "lease" and "tenancy" as being interchangeable. As we discuss below, both interpretations fail.

First, under our canons of statutory interpretation, we do not rewrite statutes to reach an outcome. *75-80 Props., L.L.C. v. Rale, Inc.*, 470 Md. 598, 624 (2020). Second, the words "termination" and "expiration" are not synonymous. A contract for a term with an expiration date ends by a lapse of time, and not as the result of any condition or conduct by the parties. *See Expire*, Black's Law Dictionary (11th ed. 2019) (An official document expires when it "become[s] null at a time fixed before-hand"); *see also Expiration*, Black's Law Dictionary (11th ed. 2019) ("The ending of a fixed period of time[.]"). By contrast, "terminate" means: "1. To put an end to; to bring to an end. 2. To end; to conclude." *Terminate*, Black's Law Dictionary (11th ed. 2019). Bryan Garner describes the

43

differences between the terms "expiration" and "termination," as those words are used in contract law, as follows:

> What is it called when a contract comes to an end? If it ends according to the contractual terms, *by lapse of time*, it's called an *expiration*. If it ends because it's cut short *by the occurrence of a condition subsequent or by a party's act*, it's definitely called a *termination*.

Bryan A. Garner, A Dictionary of Legal Usage 344 (3d ed. 2012) (first & third emphasis added). Mr. Garner notes that the *expiration* of a contract may be considered a type of *termination* and therefore, "*expiration* is a subspecies of *termination*." *Id.*

In the context of the tenant holding over statute, the General Assembly, through its use of the two separate and distinct phrases—"expiration of a lease" and "termination of a tenancy"—clearly intended that the words have different meaning. *See Drew v. First Guar. Mort. Corp.*, 379 Md. 318, 332 (2003) (explaining the "common rule of statutory construction that, when a legislature uses different words, especially in the same section or in a part of the statute that deals with the same subject, it usually intends different things" (citation modified)). And for good reason. The General Assembly's terminology is consistent with the features of these two distinct types of tenancies. As discussed in Part V.A., a tenancy for a term is memorialized in a lease, has a commencement date, and the original term has a definite end. Bregman, *supra*, at § 2.04[1]. By its very nature, a tenancy for a term established in a lease has an "expiration date." By contrast, "[t]he essential element of a periodic tenancy is that of automatic, successive renewal." *Id.* § 2.04[2] (citation modified). "This type of tenancy carries with it definite requirements as to notice of termination because it is assumed that, absent such notice, the tenancy will renew itself

44

for the stated or understood period." *Id*. In other words, unlike a tenancy for a term, for a periodic tenancy to conclude, it must "terminate" by either party giving notice.

Based upon the plain and unambiguous language, and consistent with the unique features associated with each type of tenancy, the General Assembly clearly meant what it said: (1) "expiration" means at the conclusion of a lease which has terminated by lapse of time; and (2) "termination" means after the landlord acts to "terminate the tenancy" by giving notice to terminate a periodic tenancy.

In other provisions of the tenant holding over statute, the General Assembly consistently uses the word "expiration" when referring to a tenancy for a term pursuant to a lease. For example, RP § 8-402(b)(1) gives the landlord the right to file a complaint to recover possession after giving the required statutory notice, and after the tenant fails to vacate, "where *any tenancy is for a definite term* or at will, and the landlord" desires "*to repossess the property after the expiration of the term for which it was leased*[.]" (Emphasis added).

The notice provisions in the statute contain similar language. *See id.* § 8-402(c)(1) (stating that the "subsection applies to all cases of tenancies at the *expiration of a stated term*, tenancies from year to year, tenancies from month to month, and tenancies from week to week" (emphasis added)). In the case of a "written lease for a stated term," the notice provisions are all tied to a certain date before the "expiration of the tenancy." *See id.* § 8-402(c)(2).[24]

---

[24] The notice provisions in RP § 8-402(c)(2) address different scenarios in which the landlord desires to "terminate a tenancy" and all reflect that notice must be given at

45

Turning to RP § 8-402(b)(2)—which contains the elements that a court is required to find in order to grant the landlord a judgment of possession—the text of this subsection also supports our interpretation that the tenant holding over statute only applies to a tenancy for a stated term in a lease where the lease has expired. Specifically, to obtain a writ of restitution, the landlord must establish the following: (1) "the landlord had been in possession of the leased property," (2) the "*tenancy is fully ended and expired*," (3) "due notice to quit" has "been given to the tenant or person in possession[,]" and (4) "the tenant or person in possession" has "refused so to do[.]" *Id*. § 8-402(b)(2)(1) (emphasis added). "Tenancy" clearly includes *both*: (1) a periodic tenancy that has been "fully ended" by giving notice; and (2) a tenancy for a term that has "expired."

Our interpretation of the tenant holding over statute as having no application where a tenant is occupying property pursuant to an unexpired lease is also consistent with the comprehensive statutory framework discussed in Parts V.D. and V.F., *supra*. As reflected in our discussion above, two of the three expedited remedies—summary ejectment, RP § 8-401, and breach of lease, RP § 8-402.1—by their express terms, apply where there is an

---

various dates before the "*expiration*" of a tenancy—once again reflecting that the notice is tied to a lapse of time. (Emphasis added). For example, with some exceptions not pertinent here, "if the parties have a written lease for a stated term in excess of 1 week or a tenancy from month to month," the landlord is required to provide "written notice of the intent to terminate a tenancy" "60 days before the expiration of the tenancy." *Id*. § 8-402(c)(2)(i) (citation modified). In the case of "tenancies from year to year" with the exception of some farm tenancies, the landlord is required to provide written notice "90 days before the expiration of the current year of the tenancy." *Id*. § 8-402(c)(2)(ii) (citation modified). All of the notice provisions are tied to the tenancy's "expiration," and none of the notice provisions contemplate that a landlord may provide written notice of an intent to terminate a tenancy based upon the landlord's assertion of a breach of the lease terms.

46

existing lease and the tenant breaches the lease, thereby giving the landlord the right to obtain a judgment for the restitution of the premises as the result of the tenant's breach. One statute addresses breaches resulting from nonpayment, RP § 8-401, and the other addresses breaches that do not involve the failure to render a monetary payment, RP § 8-402.1. In each instance, the General Assembly does not permit the court to grant judgment of possession in favor of the landlord simply upon the landlord providing "notice" to the tenant. Rather, these expedited remedies contain certain statutory protections for the tenant's possessory interest—namely, the right of redemption as to summary ejectment proceedings, RP § 8-401, and a judicial determination that the tenant's breach is "substantial" in the case of a breach of lease proceeding, RP § 8-402.1. To interpret the tenant holding over statute in a manner that authorizes a landlord, upon his or her unilateral determination that the tenant is in breach, to terminate a lease by simply giving "notice to quit" instead of requiring the landlord to pursue either of the other two expedited remedies (depending on the type of breach asserted), would allow the landlord to circumvent the statutory protections afforded to the tenant. Such an interpretation leads to an illogical result that is wholly inconsistent with the comprehensive expedited statutory remedies framework enacted by the General Assembly.

### B. A Landlord May Not Attempt to Insert Language Into a Lease That Would Allow the Landlord to Utilize the Tenant Holding Over Statute in a Manner That is Inconsistent with the Plain Language of the Statute

North Market asserts that, even if the plain language of the statute does not support its interpretation that the tenant holding over statute may apply where a landlord terminated a lease for nonpayment, it may still utilize the expedited statutory remedy because the

47

Lease expressly provides Landlord with such a right. Specifically, North Market asserts that under the "clear and unambiguous" language of the Lease, the parties contractually agreed that North Market would have the right to file a tenant holding over action where the Tenant breached the Lease.

When we are confronted with a question involving the interpretation of a lease, we apply the well-established rules of contract interpretation. *Chesapeake Bank of Md. v. Monro Muffler/Brake, Inc.*, 166 Md. App. 695, 706 (2006). We employ an objective approach to contract interpretation, "according to which, unless a contract's language is ambiguous, we give effect to that language as written without concern for the subjective intent of the parties at the time of formation." *Ocean Petroleum Co., Inc. v. Yanek*, 416 Md. 74, 86 (2010). This undertaking requires us to restrict our inquiry to the four corners of the agreement and to ascribe to the contract's language its customary, ordinary, and accepted meaning. *Id.*

Rather than acquiescing to the parties' intent, we consider the contract from the perspective of a reasonable person standing in the parties' shoes at the time of the contract's formation. *Id.* (citing *Cochran v. Norkunas*, 398 Md. 1, 17 (2007)). The true test "is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* (quoting *Cochran*, 398 Md. at 17). The language of a contract is only ambiguous if, when viewed from a reasonable person's perspective, it is susceptible to more than one meaning. *Id.* at 87 If a contract is unambiguous, we give effect to its plain meaning. *Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008). Absent duress, fraud, or mutual mistake, "a party

48

who signs a contract is presumed to have read and understood its terms and that the party will be bound by them when that document is executed." *Dashiell v. Meeks*, 396 Md. 149, 167 (2006).

North Market contends that under the Lease, Landlord had the right to file a tenant holding over action if Tenant refused to vacate upon "expiration" of the Lease. According to North Market, the Lease contained an "Expiration Date," which is defined in the Lease as "March 31, 2032, *unless the Lease is sooner terminated in accordance with the terms and provisions of the Lease.*" (Emphasis added). North Market asserts that the plain terms of the Lease permitted Landlord to terminate the Lease and deem it "expired" prior to March 31, 2032 in the event of a default by Tenant, which includes failure to timely pay Rent. North Market points out that under Sections 9.2 and 9.1 of the Lease, the failure to pay Rent for five or more days after its due date shall be considered an "Event of Default." North Market directs us to Section 14.7, in which Copinol agreed to vacate the premises at the end of the Lease Term. Under North Market's theory, the Lease "expired" when it terminated the Lease by giving notice to vacate, and Copinol became a tenant holding over subject to an action under RP § 8-402 for failure to vacate by the deadline set forth in its July 24 letter.

We disagree with North Market's interpretation of the Lease provisions. Under the plain and unambiguous terms of the Lease, North Market has the right to "terminate" the Lease before its expiration, in the event that Copinol breaches the Lease by failing to pay Rent on time. These provisions do not, however, redefine the term "expiration" to mean something other than its plain meaning, nor do they say that North Market has the option

49

to declare the Lease "expired" in the event of a breach. As discussed above, the words "terminate" and "expire" are not synonymous. There is a substantive difference between a contract's "expiration" at the conclusion of the Lease Term—which is March 31, 2032—and Landlord's right to "terminate" the Lease under Section 9.2 prior to the end of the term based upon Tenant's breach. There is no language in the Lease providing that, in the event of Tenant's Default, Landlord had the ability to declare the Lease "expired."

That said, *even if* the Lease contained such language—specifically allowing the Landlord to file a tenant holding over action in the event of a breach of a lease—we hold that such a lease provision would be unenforceable. We acknowledge that parties to a commercial lease generally have the freedom to negotiate its terms because, due to the typical sophistication of the parties involved, "there is little likelihood of successful overreaching on the part of the landlord and of coerced adhesion on the part of the tenant, so that the final agreement would fairly represent the actual intention of the parties." *Univ. Plaza Shopping Ctr., Inc. v. Garcia*, 279 Md. 61, 67 (1977). That said, parties cannot contractually modify statutory terms to avail themselves of judicial processes or remedies in a manner inconsistent with the plain language of the statute providing such a right.

As discussed above, where a tenant is occupying property under a lease for a term, the tenant holding over statute, by its plain and unambiguous terms, applies only where the lease has expired. The General Assembly has created this expedited statutory remedy—and conferred jurisdiction on the District Court to grant such relief—*only* where the landlord can satisfy the statutory elements. A landlord cannot, by contract, attempt to avail itself of a statutory remedy that provides judicial relief where he or she cannot satisfy the

statutory elements. By way of analogy, parties to a contract could not agree that all contractual disputes in excess of $30,000 must be brought in the District Court.[25] Parties to a contract do not have authority to avail themselves of the limited jurisdiction of the District Court where the General Assembly has not provided such relief.

In *Westminster Management, LLC v. Smith*, we were asked to determine whether the landlord could bring a summary ejectment action under RP § 8-401 to collect certain charges that the lease defined as "rent," including fees charged for late payments or other lease violations, fees paid to third party agents to initiate summary ejectment proceedings, filing fees, and other court costs. 486 Md. at 637. The landlord argued that the Court should apply the definition of "rent" as defined in the lease and pointed out that the summary ejectment statute did not specifically define the term. *Id.* at 624, 637. Therefore, the landlord argued, "rent" could encompass whatever a written lease says it encompasses. *Id.* The tenants disagreed, asserting that "rent" for purposes of the summary ejectment action was more specific and limited. *Id.* at 625. We agreed with the tenants. *Id.* at 638. We noted, "at the outset," that the issue was "not whether a landlord can enforce any particular payment obligation owed by a tenant[,]" but rather "the issue is whether a landlord can enforce any such obligation *through the mechanism of a summary ejectment action*." *Id.* After analyzing the text of the statute, its purpose, and prior case law, we held that, for the purposes of summary ejectment proceedings involving residential leases,

---

[25] CJ § 4-401(1) grants the District Court of Maryland "exclusive original civil jurisdiction" in "[a]n action in contract or tort, *if the debt or damages claimed do not exceed §30,000*, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract[.]" (Emphasis added).

"rent" "means the fixed, periodic payments a tenant owes for use or occupancy of a rented premises." *Id.* at 649. We concluded that the landlord could not "expand the scope of this special statutory remedy through the terms of leases it imposes on tenants." *Id.* at 650.

We reach the same result here. The issue presented before us is *not* whether North Market can enforce the terms of the Lease, but rather the issue is whether North Market can enforce the terms "through the mechanism of a [tenant holding over] action." *Id.* at 638 (emphasis omitted). For the reasons stated herein, we conclude that North Market cannot.

**VII**

**Conclusion**

For the reasons set forth more fully herein, we hold that:

(1) The tenant holding over statute, RP § 8-402, has no application where the tenant is in possession of property pursuant to a lease that has not expired by lapse of time; and

(2) The landlord cannot contractually modify the statutory meaning of the phrase "expiration of a lease" in RP § 8-402, thereby enabling a landlord to avail itself of remedies available under the tenant holding over statute in a manner inconsistent with its plain language.

Justice Watts joins the judgment only and writes separately as follows.

Respectfully, I join the judgment only and write to explain my reasons.  Although the majority opinion accurately resolves the issues before the Court, I do not believe that the lengthy discussion of the history of the "Common Law and Statutory Background" in Part V, sections A-F, on pages 15 to 39 of the opinion is necessary or germane to resolution of the issues in the case.  This case involves two questions: (1) whether the General Assembly intended Md. Code Ann., Real Prop. ("RP") § 8-402, the tenant holding over statute, to apply where a tenant occupies a property pursuant to a lease that has not expired through lapse of time; and (2) if the answer is no, whether a landlord may contract to provide for remedies that are inconsistent with the tenant holding over statute.  The historical narrative on pages 15 to 39 of the majority opinion addresses topics such as the landlord-tenant relationship at common law, common law ejectment, the British Parliament's enactment of 4 Geo. II, Ch. 28, Maryland's codification of remedies available to landlords, the District Court's jurisdiction, and a discussion titled "The Expedited Statutory Remedies and the Balancing of Interests."  In this lengthy narrative, the majority opinion covers historical events and statutes not at issue in the case and provides the perspective that the statutes codified at  RP § 8-401, RP § 8-402, and RP §8-402.1 were enacted primarily with the purpose of allowing landlords a quick method to recover possession of property depending on the circumstance of a tenant's default while providing tenants the "trade-off" of certain statutory protections.  Maj. Slip Op. at 38.

Although providing expedited proceedings was one of the General Assembly's purposes in enacting RP § 8-401, RP § 8-402, and RP § 8-402.1, the General Assembly

has afforded tenants significant rights that are not merely a "trade-off" for allowing landlords quick process. RP § 8-401, the summary ejectment statute, provides important protections for tenants, such as the requirement that a landlord provide proof of compliance with notice procedures to the tenant and a right of redemption for the tenant. RP § 8-401(c) requires that before a landlord may file a complaint under the statute, the landlord must provide written notice to the tenant of the landlord's intent to file a claim in the District Court to recover possession of residential premises if the tenant does not cure within 10 days after receipt of the written notice. Any complaint for repossession that is filed under RP § 8-401 must include a statement that affirms the date on which the landlord provided the required notice. See RP § 8-401(c)(3)(i). RP § 8-401(c)(3)(ii) provides that a tenant may challenge assertions made by the landlord as to notice and the court may dismiss the landlord's complaint upon a showing of sufficient cause. And, RP § 8-401(g)(1) provides that,

> in any action of summary ejectment for failure to pay rent where the landlord is awarded a judgment giving the landlord restitution of the leased premises, the tenant shall have the right to redemption of the leased premises by tendering in cash, certified check, or money order to the landlord or the landlord's agent all past due amounts, as determined by the court under subsection (e) of this section, plus all court awarded costs and fees, at any time before actual execution of the eviction order.

Under RP § 8-402, the tenant holding over statute, generally, where a tenancy is for a definite term or at will, the landlord must provide written notice to the tenant of the intent to terminate the tenancy at a designated number of days before the expiration of the tenancy. And, RP § 8-402.1, the breach of lease statute, requires that a landlord give a tenant 30 days' or 14 days' written notice, depending on the circumstances of the breach,

that the tenant is in violation of the lease and the landlord desires to repossess the leased premises.

In addition, the General Assembly has provided, and this Court has confirmed, that the rent escrow law set forth in RP § 8-211 may be used as a defense in summary ejectment proceedings. See, e.g., Pettiford v. Next Generation Trust Serv., 467 Md. 624, 659, 226 A.3d 15, 35 (2020) (stating that this Court has "held that a tenant may raise issues under the rent escrow statute as an affirmative defense in a summary ejectment action" (citation omitted)). RP § 8-208.1 protects tenants from retaliatory actions by landlords. RP § 8-208.1(a) provides that a landlord may not "[b]ring or threaten to bring an action for possession against a tenant" because the tenant or the tenant's agent: (1) makes a good faith complaint to the landlord, or to any public agency about the landlord, regarding an alleged violation of the lease, a violation of the law, or a condition on the leased premises that is a substantial threat to the health or safety of occupants; (2) has filed a lawsuit against the landlord, or testified or participated in a lawsuit involving the landlord; or (3) has participated in any tenants' organization. A tenant may raise a retaliatory act of a landlord as a defense or as an affirmative claim for damages. See RP § 8-208.1(b)(2).

The Maryland Consumer Protection Act ("MCPA") also provides protection for tenants. Under the MCPA, public enforcement actions can be instituted against a landlord and tenants may seek damages under certain circumstances in which the landlord's conduct has resulted in harm.

And, significantly, the General Assembly recently enacted RP § 8-406, which provides that, in a county, municipality, or any other jurisdiction that requires a license for

the lawful operation of residential rental property, a landlord must be licensed to make use of the summary proceedings set forth in RP § 8-401, RP § 8-402, and RP § 8-402.1. RP § 8-406 essentially overruled this Court's holding in Velicky v. Copycat Bldg. LLC, 476 Md. 435, 264 A.3d 661 (2021), that, despite the fact that a landlord did not have a rental license as required by Baltimore City law, the landlord could avail itself of the summary procedures of the tenant holding over statute to evict residential tenants who did not vacate their apartments after receiving notice to quit.[1] RP § 8-211, RP § 8-208.1, RP § 8-406 and Maryland's consumer protection laws provide important protections for tenants in addition to those set forth in summary proceedings statutes.

My concern is that the Majority's historical discussion, which in this case is largely *dicta*, will be quoted and used to urge trial courts to act swiftly in a landlord's favor in proceedings in the District Court, without taking adequate account of the protections for tenants that the General Assembly has enacted into law. Given that tenants in District Court proceedings are often self-represented, they may not be in a position to bring to the court's attention the defenses or remedies that are available to them but not covered in the Majority's recitation of the history of landlord-tenant law. Where the majority opinion engages in such a lengthy recitation of the rights given to landlords in summary ejectment proceedings, in the interest of balance and the appearance of impartiality, the protections afforded tenants should not be given short shrift. Because the majority opinion's historical

---

[1]Although the majority opinion cites and quotes from Velicky, see, e.g., Maj. Slip Op. at 15, 18, 24-25, the opinion does not mention the General Assembly's recent enactment of RP § 8-406.

discussion is unnecessary and, in my view, its tone and content are inclined in favor of the

landlord's perspective, I do not join the opinion, but join the judgment only.